**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., <br> New Babylon Gardens, <br> Anna van Buerenplein 41, 2595 DA, <br> The Hague, Netherlands, <br><br> CONOCOPHILLIPS HAMACA B.V., <br> New Babylon Gardens, <br> Anna van Buerenplein 41, 2595 DA, <br> The Hague, Netherlands, <br><br> and CONOCOPHILLIPS GULF OF PARIA B.V., <br> New Babylon Gardens, <br> Anna van Buerenplein 41, 2595 DA, <br> The Hague, Netherlands, <br><br>                 Petitioners, <br><br>         v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br> Ministerio del Poder Popular para Relaciones <br>    Exteriores, <br> Oficina de Relaciones Consulares, <br> Avenida Urdaneta, <br> Esquina de "Carmelitas" a "Puente Llaguno," <br> Edificio anexo a la Torre "MRE," <br> Caracas, 1010, <br> República Bolivariana de Venezuela, <br><br>                 Respondent. | Civil Action No. _____ |

**PETITION TO RECOGNIZE AND**
**ENFORCE AN ICSID ARBITRATION AWARD**

Petitioners ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of Paria B.V. (collectively, "Petitioners"), by and through their attorneys, state as follows:

## INTRODUCTION

By this action, Petitioners respectfully seek the recognition of an arbitration award pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention").  The final arbitration award (the "Award") was issued on March 8, 2019, in favor of Petitioners and against Respondent, the Bolivarian Republic of Venezuela ("Venezuela"), following an arbitration (the "Arbitration") conducted under the auspices of the International Centre for Settlement of Investment Disputes ("ICSID"), an arm of the World Bank.  In addition, Petitioners seek an order enforcing the pecuniary obligations imposed by the Award by an entry of judgment in Petitioners' favor and against Venezuela in the full amount of the Award, including interest and costs as provided therein and with further interest to accrue pursuant to the Award until the date of payment in full, in addition to the costs of this proceeding.

A true and correct copy of the Award is attached as Exhibit A to the Declaration of Elliot Friedman in support of Petitioners' Petition to Recognize and Enforce an ICSID Arbitration Award ("Friedman Declaration" or "Friedman Decl."), dated March 11, 2019.[1]

## PRELIMINARY STATEMENT

1. Petitioners seek the recognition and enforcement of an arbitral award rendered against Venezuela.  Petitioners were participants in three Venezuelan oil projects from the 1990s until 2007.  Those projects involved the extraction and upgrading of crude oil from three large oil fields in Venezuela.

---

[1] The relevant articles of the ICSID Convention are attached as Exhibit B to the Friedman Declaration.

2. The Venezuelan government expropriated Petitioners' interests in those oil projects in June 2007. On November 2, 2007, Petitioners initiated ICSID arbitration proceedings against Venezuela under the Netherlands-Venezuela Bilateral Investment Treaty (the "Treaty"). In September 2013, the ICSID arbitral tribunal (the "Tribunal") determined that Venezuela had unlawfully expropriated Petitioners' interests in the three projects and was liable to compensate Petitioners for that breach. *See* Friedman Decl., ¶ 7 and Ex. D, ¶¶ 410, 404. In a subsequent damages phase, which culminated in the final Award rendered on March 8, 2019, the Tribunal awarded Petitioners damages amounting to US$8,733,046,155, plus US$21,861,000 in legal fees and costs, and post-award interest to accrue from May 7, 2019.[2] *See* Friedman Decl., ¶ 8. Petitioners now seek this Court's recognition and enforcement of the Award.

**PARTIES**

3. Petitioner ConocoPhillips Petrozuata B.V. ("CPZ") is a wholly owned subsidiary of ConocoPhillips Company, a corporation incorporated under the laws of the State of Delaware, United States of America, which in turn is a wholly owned subsidiary of ConocoPhillips, which is publicly traded corporation incorporated under the laws of the State of Delaware, United States of America. CPZ is incorporated under the laws of The Kingdom of the Netherlands, having its registered office at New Babylon Gardens, Anna van Buerenplein 41, 2595 DA, The Hague, Netherlands. At the time of Venezuela's expropriation that led to the dispute underlying the Award, CPZ held a 50.1 percent interest in the Petrozuata Project, an extra-heavy crude oil project located in the Orinoco oil belt in Venezuela.

---

[2] The arbitration costs were paid through advance payments to ICSID. The unused portion of that advance is to be refunded to Petitioners by ICSID. Therefore, the total administrative costs for which Venezuela is to reimburse Petitioners will be reduced slightly. Petitioners will update the Court once the amount of the refund by ICSID is known. *See* Friedman Decl., ¶ 8 n.2.

4.      Petitioner ConocoPhillips Hamaca B.V. ("CPH") is a wholly owned subsidiary of Phillips Petroleum International Investment Company, a corporation incorporated under the laws of the State of Delaware, which is in turn a wholly owned subsidiary of ConocoPhillips Company.  CPH is incorporated under the laws of The Kingdom of the Netherlands, having its registered office at New Babylon Gardens, Anna van Buerenplein 41, 2595 DA, The Hague, Netherlands.  At the time of Venezuela's expropriation that led to the dispute underlying the Award, CPH held a 40 percent interest in the Hamaca Project, an extra-heavy crude oil project located in the Orinoco oil belt in Venezuela.

5.      Petitioner ConocoPhillips Gulf of Paria B.V. ("CGP") is a wholly owned subsidiary of ConocoPhillips Company.  CGP is incorporated under the laws of The Kingdom of the Netherlands, having its registered offices at New Babylon Gardens, Anna van Buerenplein 41, 2595 DA, The Hague, Netherlands.  At the time of Venezuela's expropriation that led to the dispute underlying the Award, CGP held a 32.2075 percent interest in the Corocoro Project, an offshore crude oil project located in the Gulf of Paria between the coasts of Venezuela and Trinidad.

6.      Respondent is the Bolivarian Republic of Venezuela, a foreign State within the meaning of the Foreign Sovereign Immunities Act ("FSIA").  *See* 28 U.S.C. § 1603(a).  On November 2, 2007, the date that Petitioners initiated arbitration proceedings by filing a Request for Arbitration with ICSID, Venezuela was a party to the ICSID Convention.[3]

---

[3]     While the arbitration was pending, Venezuela withdrew from the ICSID Convention, effective on July 25, 2012.  However, all of the rights of Petitioners and obligations of Venezuela that were at issue in the underlying arbitration, and which Petitioners seek to have recognized and enforced by this Petition, arose before Venezuela's denunciation took effect and were therefore unaffected by it.  *See* Friedman Decl., Ex. B, Art. 72 ("Notice [of denunciation] by a Contracting State . . . shall not affect the rights or obligations under this Convention . . . arising out of consent to the jurisdiction of the

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that the United States District Courts shall have original subject matter jurisdiction over any nonjury civil action against a foreign State unless the foreign State is entitled to immunity under the FSIA or an applicable international agreement.

8. Venezuela is not entitled to immunity here. Venezuela has waived its immunity for purposes of this Petition by becoming a party to the ICSID Convention. *See* 28 U.S.C. § 1605(a)(1). In addition, Venezuela is not entitled to immunity because this action seeks to recognize an arbitral award made pursuant to a treaty in force in the United States calling for the recognition and enforcement of arbitral awards—specifically, the ICSID Convention. *See* 28 U.S.C. § 1605(a)(6).

9. This Court also has subject matter jurisdiction over this action pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions" to enforce an ICSID award. The United States is a party to the ICSID Convention. The Federal Arbitration Act does not apply to this action. *See* 22 U.S.C. § 1650a(a).

10. This Court may exercise personal jurisdiction over Venezuela pursuant to 28 U.S.C. § 1330(b), which provides that the United States District Courts have personal jurisdiction over a foreign State that—like Venezuela in this action—is not entitled to immunity, provided that service of process is effected in accordance with 28 U.S.C. § 1608. Petitioners intend to serve process in a timely manner on Venezuela pursuant to 28 U.S.C. § 1608(a), including, if required,

---

Centre given by one of them before such notice was received by the depositary."). In the arbitration, Venezuela raised no objection to the Tribunal's jurisdiction based on the State's subsequent denunciation of the ICSID Convention. *See* Friedman Decl., ¶ 6.

5

through the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

11. Venue is proper in this district under 28 U.S.C. § 1391(f)(4), which provides that a party may bring a civil action against a foreign State in the United States District Court for the District of Columbia.

## THE DISPUTE AND THE AWARD

12. Petitioners were participants in three crude oil projects in Venezuela, known as the Petrozuata, Hamaca and Corocoro projects (the "Projects"). Petitioners' claims in the Arbitration arose from a series of actions taken by Venezuela that culminated in the unlawful expropriation of Petitioners' interests in the Projects in violation of the Treaty and international law.

13. In the early 1990s, the Venezuelan government decided, as a matter of strategic and economic priority, to develop the vast hydrocarbon resources in the Orinoco oil belt, which it estimated to contain over one trillion barrels of oil. The exploitation of the Orinoco's oil reserves had stymied Venezuela since the 1920s. The government recognized that it did not have the means or ability to carry out that task alone. *See* Friedman Decl., Ex. D, ¶ 102.

14. Venezuela therefore embarked on the *Apertura Petrolera*, or "Oil Opening." To induce foreign investors to return to an oil industry that had been nationalized less than 20 years before, Venezuela offered incentives, including majority equity stakes in long-term oil projects and favorable income tax and royalty regimes. *See id.* at ¶¶ 103–06, 141, 167.

15. On the basis of these fiscal inducements, as well as specifically negotiated contractual protections, Petitioners invested billions of dollars into the Projects in the 1990s and 2000s. *See*

*id.* at ¶¶ 111–13, 117–18, 127, 132, 142, 146, 159, 169, 173, 181. After these investments and a decade of work, Petitioners CPZ and CPH succeeded in bringing the Petrozuata Project and the Hamaca Project online. Commercial production of oil commenced in 2001 at the Petrozuata Project and in 2004 at the Hamaca Project. *Id.* at ¶¶ 137, 161. In addition, the Corocoro Project commenced production in January 2008. *See* Friedman Decl., Ex. A, ¶ 553.

16. However, beginning in 2004, Venezuela initiated a series of coordinated measures that collectively deprived Petitioners of their investments. These measures included the abrogation of a royalty agreement applying to the Projects; the introduction of new and unfavorable oil and income tax regimes; and, ultimately, the confiscation of all three Projects without any compensation paid to Petitioners. *See* Friedman Decl., Ex. D, ¶¶ 190, 193–95, 196, 199–208.

17. Petitioners commenced an ICSID arbitration against Venezuela for (*inter alia*) the unlawful expropriation of their investments in the Petrozuata, Hamaca, and Corocoro Projects.[4] Petitioners submitted a Request for Arbitration to ICSID on November 2, 2007, and ICSID registered that Request on December 13, 2007. *Id.* at ¶¶ 10, 12.

18. In their Request for Arbitration, Petitioners argued, *inter alia*, that Venezuela had breached Article 6 of the Treaty by unlawfully expropriating their interests in the Projects. *See id.* at ¶ 212. Petitioners requested an award of compensation plus interest, other relief as the

---

[4] Subsidiaries of ConocoPhillips Company, including CPZ and CGP, also commenced two related international commercial arbitrations under the auspices of the International Chamber of Commerce. These arbitrations were based on breaches of contractual obligations owed by Venezuela's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"), and several PDVSA subsidiaries to the ConocoPhillips Company entities participating in the Projects. An award was rendered in the first of these arbitrations— relating to the Petrozuata and Hamaca Projects—in April 2018, and has been the subject of enforcement proceedings in several countries, including in the United States, where it was confirmed as a judgment in *Phillips Petroleum Co. Venezuela Ltd. et al. v. Petróleos De Venezuela, S.A. et al.*, No. 1:18-cv-03716 (S.D.N.Y. August 23, 2018), ECF No. 25. The arbitration relating to the Corocoro Project is pending. Petitioners have undertaken not to seek, and will not seek, double recovery. *See* Friedman Decl., ¶ 14.

Tribunal considered appropriate, and the legal fees and costs incurred in the arbitral proceedings.[5] *Id.*

19. The three-member Tribunal was constituted on July 23, 2008. *Id.* at ¶ 24. On September 3, 2013, the Tribunal rendered its Decision on Jurisdiction and the Merits (the "2013 Decision"), finding, *inter alia*, that Venezuela had expropriated the three Projects in violation of the Treaty and international law. *See id.* at ¶¶ 362, 401, 404(d). On January 17, 2017, the Tribunal issued an Interim Decision reaffirming that finding of unlawful expropriation against Venezuela (the "2017 Decision"). *See* Friedman Decl., Ex. E, ¶ 156.

20. The damages phase of the arbitration proceeded between 2013 and 2019. *See* Friedman Decl., Ex. A, ¶¶ 3–70. On March 8, 2019, the Secretary-General of ICSID dispatched the Tribunal's Award. The Award incorporates by reference the 2013 Decision and the 2017 Decision. *See id.* at ¶¶ 38, 43, 1009. The Tribunal's Award was unanimous.

21. The Tribunal awarded Petitioners monetary damages in the amount of US$8,733,046,155, together with post-award interest, to begin accruing 60 days after the issuance of the Award until payment in full. The Tribunal also ordered Venezuela to reimburse Petitioners for a portion of their legal fees and ICSID arbitration costs, in an additional amount of US$21,861,000.[6] The full current amount of the Award is therefore US$8,754,907,155. *See* Friedman Decl., ¶ 8.

22. The Tribunal's unanimous Award was the culmination of an arbitration proceeding that lasted over a decade. During that time, the parties submitted over 3000 pages of written

---

[5] ConocoPhillips Company was also initially a named Claimant in the Request for Arbitration (in addition to Petitioners). However, in its 2013 Decision on Jurisdiction and the Merits, the Tribunal decided that it did not have jurisdiction over ConocoPhillips Company's claims. *See* Friedman Decl., Ex. D, ¶ 404. Thereafter ConocoPhillips Company ceased to be a party to the arbitration, and is not a party to this action.

[6] *See* footnote 2, above.

pleadings, 28 witness statements, 45 reports by damages and other experts, and nearly 2000 exhibits and legal authorities. The parties also participated in over 30 days of hearings, at which they made legal submissions and examined witnesses and experts before the Tribunal. Venezuela was actively represented by counsel throughout the Arbitration, namely attorneys of the law firm Curtis, Mallet-Provost, Colt & Mosle LLP.  *Id.* at ¶ 9.

## LEGAL BASIS FOR RELIEF

23.   Article 54(1) of the ICSID Convention requires Contracting States to "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." Friedman Decl., Ex. B, at Art. 54(1).

24.   To fulfill this obligation, the United States passed implementing legislation that provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) shall not apply to enforcement of awards rendered pursuant to the [ICSID] convention.

22 U.S.C. § 1650a(a).

25.   The ICSID Convention prevents parties to an ICSID arbitration from challenging an ICSID award in court. *See* Friedman Decl., Ex. B, Art. 53(1). Accordingly, Venezuela may not collaterally attack the Award in this proceeding. Thus, because the arbitration was conducted pursuant to the ICSID Convention, Venezuela's only opportunity to challenge the Award is through the ICSID annulment process. Venezuela has 120 days from the issuance of the Award to file an application for annulment with ICSID. *Id.* at Art. 52(2). As of today, Venezuela has not done so.

26.   The Court should accordingly recognize and enforce the Award.

**THE AWARD MUST BE RECOGNIZED AND ENFORCED**

27.   Petitioners restate and incorporate Paragraphs 1 through 26 as if set forth fully herein.

28.   The Award, a binding arbitration award under the ICSID Convention, has been issued in Petitioners' favor.

29.   Awards issued pursuant to the ICSID Convention are subject to recognition and enforcement in the United States pursuant to 22 U.S.C. § 1650a.

30.   Petitioners are thus entitled to an order recognizing the Award as a judgment pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention, and enforcing the pecuniary obligations imposed by the Award by entering judgment thereon in the full amount of the Award, with ongoing interest to accrue pursuant to paragraph 1010 of the Award until the Award is paid in full, in addition to the costs awarded by the Tribunal and the costs of this proceeding.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioners pray that the Court enter an Order:

   a. Recognizing and enforcing the Award as a judgment of this Court, pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention;

   b. Entering judgment in favor of Petitioners and against Venezuela in the amount of the full value of the Award, *i.e.*, (i) damages, fees, and costs awarded by the arbitral tribunal in the amount of US$8,754,907,155; and (ii) ongoing interest as provided by the arbitral tribunal, accruing from May 7, 2019 until the date of payment in full;

   c. Ordering Venezuela to pay the costs of this proceeding; and

   d. Granting Petitioners such other and further relief as the Court deems just and proper.

Dated: March 11, 2019
New York, New York

Respectfully submitted,
By: ___/s/ Elliot Friedman___

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Elliot Friedman (D.C. Bar No. NY0106)
Sam Prevatt (*pro hac vice* pending)
Cameron Russell (*pro hac vice* pending)

601 Lexington Avenue
31st Floor
New York, New York 10022
Tel:    212-277-4000
Fax:    212-277-4001
*elliot.friedman@freshfields.com*
*sam.prevatt@freshfields.com*
*cameron.russell@freshfields.com*

D. Brian King (*pro hac vice* pending)

New York University School of Law,
40 Washington Square South, Room 508
New York, New York 10012
Tel:    212-992-8175
*brian.king@dbkingarbitration.com*

**KOBRE & KIM LLP**
Michael S. Kim (D.C. Bar No. 1032401)
Marcus J. Green (D.C. Bar No. 999223)
Josef M. Klazen (D.C. Bar No. 1003749)

1919 M Street, NW
Washington, DC 20036
Tel:    202-664-1900
*michael.kim@kobrekim.com*
*marcus.green@kobrekim.com*
*josef.klazen@kobrekim.com*

*Attorneys for ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of Paria B.V.*