**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., CONOCOPHILLIPS HAMACA B.V., and CONOCOPHILLIPS GULF OF PARIA B.V., <br><br><br> Petitioners, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br><br> Respondent. | Civil Action No. _____ |

**PETITIONERS' STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT
OF PETITION TO RECOGNIZE AND ENFORCE AN ICSID ARBITRATION AWARD**

**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**
601 Lexington Avenue, 31st Floor
New York, New York 10022
Tel:      212-277-4000
Fax:      212-277-4001

**D. Brian King** (*pro hac vice* pending)
New York University School of Law
40 Washington Square South,
     Room 508
New York, New York 10012
Tel:      212-992-8175

**KOBRE & KIM LLP**
1919 M Street, NW
Washington, DC 20036
Tel:      202-664-1900

*Attorneys for Petitioners*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT .......................................................................................................................6

      I.      The Award Must Be Given Full Faith And Credit Pursuant To 22 U.S.C. § 1650a ..................................................................................................6

      II.     This Court Has Jurisdiction To Recognize And Enforce The Award Because Venezuela Does Not Benefit From Sovereign Immunity .............6

      III.    The Court Should Not Entertain Any Substantive Challenges To The Award ................................................................................................10

CONCLUSION ...................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blue Ridge Invs., L.L.C. v. Republic of Argentina*,
 735 F.3d 72 (2d Cir. 2013) ........................................................................7, 8

*Continental Casualty Co. v. Argentine Republic*,
 893 F. Supp. 2d 747 (E.D. Va. 2012) ................................................................7

*Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*,
 904 F. Supp. 2d 131 (D.D.C. 2012) ................................................................6

*GSS Group Ltd. v. Nat'l Port Authority*,
 680 F.3d 805 (D.C. Cir. 2012) ........................................................................9

*M.B.L. Int'l Contractors, Inc. v. Republic of Trin. & Tobago*,
 725 F. Supp. 52 (D.D.C. 1989) ........................................................................8

*Micula v. Gov't of Romania*,
 104 F. Supp. 3d 42 (D.D.C. 2015) ....................................................................9

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
 863 F.3d 96 (2d Cir. 2017) ........................................................................7, 10

*Phillips Petroleum Co. Venezuela Ltd. et al. v. Petróleos De Venezuela, S.A. et al.*, No. 1:18-cv-03716 (S.D.N.Y. August 23, 2018), ECF No. 25 ........................4

*Price v. Socialist People's Libyan Arab Jamahiriya*,
 294 F.3d 82 (D.C. Cir. 2002) ........................................................................10

*TMR Energy Ltd. v. State Prop. Fund of Ukr.*,
 411 F.3d 296 (D.C. Cir. 2005) ........................................................................10

**Statutes**

*22 U.S.C. § 1650a ....................................................................................2, 6, 11

28 U.S.C. § 1330 ........................................................................................9

28 U.S.C. § 1391 ........................................................................................10

28 U.S.C. § 1605 ................................................................................7, 8, 9

28 U.S.C. § 1608 ........................................................................................9

**Treaties**

Agreement on Encouragement and Reciprocal Protection of Investments (with
  Protocol), Neth.-Venez., Oct. 22, 1991, 1788 U.N.T.S. 45.......................................................3

Convention of 15 November 1965 on the Service Abroad of Judicial and
  Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20
  U.S.T. 361, 658 U.N.T.S. 163...............................................................................................9

*Convention on the Settlement of Investment Disputes between States and
  Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 ............. *passim*

**Other Authorities**

Status Table, Convention of 15 November 1965 on the Service Abroad of Judicial
  and Extrajudicial Documents in Civil or Commercial Matters,
  https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 ................................9

ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of Paria B.V. (collectively, "Petitioners") respectfully submit this Statement of Points and Authorities in support of the Petition to Recognize and Enforce an ICSID Arbitration Award (the "Petition"), dated March  11, 2019.[1]

## PRELIMINARY STATEMENT

Petitioners seek the recognition and enforcement of an arbitration award issued in their favor on March 8, 2019 (the "Award").  The Award was issued against Respondent, the Bolivarian Republic of Venezuela ("Venezuela"), following a decade-long arbitration conducted under the Rules of Arbitration of the International Centre for Settlement of Investment Disputes ("ICSID"), captioned *ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Company v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/30 (the "Arbitration").  *See* Friedman Decl., Ex. A.  The Award granted Petitioners compensation for Venezuela's unlawful expropriation of Petitioners' interests in two oil projects in Venezuela's Orinoco oil belt, and in one offshore oil project in the Gulf of Paria.  *See id.*

ICSID is an arm of the World Bank.  It is an international arbitral institution established under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention"), which is currently in force among 154 Contracting States, including the United States.

Article 54(1) of the ICSID Convention obliges each Contracting State to recognize an arbitration award issued pursuant to the ICSID Convention and enforce the pecuniary obligations

---

[1] Petitioners have also filed in support of the Petition the Declaration of Elliot Friedman ("Friedman Declaration" or "Friedman Decl."), dated March 11, 2019.  Cited exhibits are attached to the Friedman Declaration.

it imposes, without considering the merits of, or any substantive challenge to, the award.  *See* Friedman Decl., Ex. B, Art. 54(1).  The United States has implemented Article 54(1) of the ICSID Convention by enacting 22 U.S.C. § 1650a, which requires the United States District Courts to recognize and enforce the pecuniary obligations in an ICSID award and afford the Award the same full faith and credit as a final judgment issued by a state court.

Venezuela has not satisfied its obligations under the Award.  Accordingly, Petitioners respectfully request that this Court recognize the Award and enforce it by entering a judgment in favor of Petitioners and against Venezuela for the full value of the Award, presently US$8,754,907,155, plus ongoing interest as provided for in the Award accruing until the date of payment in full, and the costs of this proceeding.

## STATEMENT OF FACTS

Petitioners were participants in crude oil projects in Venezuela, known as the Petrozuata, Hamaca and Corocoro projects (the "Projects").  At the time of Venezuela's expropriation that led to the dispute giving rise to the Award:  Petitioner ConocoPhillips Petrozuata B.V. ("CPZ") held a 50.1 percent interest in the Petrozuata Project, an extra-heavy crude oil project located in the Orinoco oil belt in Venezuela; Petitioner ConocoPhillips Hamaca B.V. ("CPH") held a 40 percent interest in the Hamaca Project, an extra-heavy crude oil project likewise located in the Orinoco oil belt; and Petitioner ConocoPhillips Gulf of Paria B.V. ("CGP") held a 32.2075 percent interest in the Corocoro Project, an offshore crude oil project located in the Gulf of Paria between the coasts of Venezuela and Trinidad.  *See* Friedman Decl., Ex. D, ¶ 7.

Petitioners' claims in the Arbitration arose from a series of actions taken by Venezuela that culminated in the unlawful expropriation of Petitioners' interests in the Projects in violation of the Netherlands-Venezuela bilateral investment treaty (the "Treaty") and international law.[2]

In the early 1990s, the Venezuelan government decided, as a matter of strategic and economic priority, to develop the vast hydrocarbon resources in the Orinoco oil belt, which it estimated to contain over one trillion barrels of oil. The exploitation of the Orinoco's crude oil reserves had stymied Venezuela since the 1920s. The government recognized that it did not have the means or ability to carry out that task alone. *See id.* at ¶ 102.

Venezuela therefore embarked on the *Apertura Petrolera*, or "Oil Opening." To induce foreign investors to return to an oil industry that had been nationalized less than 20 years before, Venezuela offered incentives, including majority equity stakes in long-term oil projects and favorable income tax and royalty regimes. *See id.* at ¶¶ 103–06, 141, 167.

On the basis of these fiscal inducements, as well as specifically negotiated contractual protections, Petitioners invested billions of dollars into the Projects in the 1990s and 2000s. *See id.* at ¶¶ 111–13, 117–18, 127, 132, 142, 146, 159, 169, 173, 181. After these investments and a decade of work, Petitioners CPZ and CPH succeeded in bringing the Petrozuata Project and the Hamaca Project online. Commercial production of oil commenced in 2001 at the Petrozuata Project and in 2004 at the Hamaca Project. *Id.* at ¶¶ 137, 161. In addition, the Corocoro Project commenced production in January 2008. *See* Friedman Decl., Ex. A, ¶ 553.

However, beginning in 2004, Venezuela initiated a series of coordinated measures that collectively deprived Petitioners of their investments. These measures included the abrogation of a royalty agreement applying to the Projects; the introduction of new and unfavorable oil and

---

[2]       Agreement on Encouragement and Reciprocal Protection of Investments (with Protocol), Neth.-Venez., Oct. 22, 1991, 1788 U.N.T.S. 45.

income tax regimes; and, ultimately, the confiscation of all three Projects without any compensation paid to Petitioners.  *See* Friedman Decl., Ex. D, ¶¶ 190, 193–95, 196, 199–208.

Petitioners commenced an ICSID arbitration against Venezuela for (*inter alia*) the unlawful expropriation of their investments in the Petrozuata, Hamaca, and Corocoro Projects.[3] Petitioners submitted a Request for Arbitration to ICSID on November 2, 2007, and ICSID registered that Request on December 13, 2007.  *Id.* at ¶¶ 10, 12.

In their Request for Arbitration, Petitioners argued, *inter alia*, that Venezuela had breached Article 6 of the Treaty by unlawfully expropriating their interests in the Projects.  *See id.* at ¶ 212.  Petitioners requested an award of compensation plus interest, other relief as the Tribunal considered appropriate, and the legal fees and costs incurred in the arbitral proceedings.[4]  *Id.*

The three-member tribunal (the "Tribunal") was constituted on July 23, 2008.  *Id.* at ¶ 24. On September 3, 2013, the Tribunal rendered its Decision on Jurisdiction and the Merits (the "2013 Decision").  The Tribunal found, *inter alia*, that Venezuela had expropriated the three

---

[3]     Subsidiaries of ConocoPhillips Company, including CPZ and CGP, also commenced two related international commercial arbitrations under the auspices of the International Chamber of Commerce.  These arbitrations were based on breaches of contractual obligations owed by Venezuela's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"), and several PDVSA subsidiaries to the ConocoPhillips Company entities participating in the Projects.  An award was rendered in the first of these arbitrations— relating to the Petrozuata and Hamaca Projects—in April 2018, and has been the subject of enforcement proceedings in several countries, including in the United States, where it was confirmed as a judgment in *Phillips Petroleum Co. Venezuela Ltd. et al. v. Petróleos De Venezuela, S.A. et al.*, No. 1:18-cv-03716 (S.D.N.Y. August 23, 2018), ECF No. 25. The arbitration relating to the Corocoro Project is pending.  Petitioners have undertaken not to seek, and will not seek, double recovery.  *See* Friedman Decl., ¶ 14.

[4]     In addition to Petitioners, ConocoPhillips Company, a Delaware company, was a named Claimant in the Request for Arbitration.  However, in its 2013 Decision on Jurisdiction and the Merits, the Tribunal decided that it did not have jurisdiction over ConocoPhillips Company's claims.  Therefore, ConocoPhillips Company ceased to be a party to the arbitration after the 2013 Decision, and is not a party to this action.

Projects in violation of the Treaty and international law.  *See id.* at ¶¶ 362, 401, 404(d).  On January 17, 2017, the Tribunal issued an Interim Decision reaffirming that finding of unlawful expropriation against Venezuela (the "2017 Decision").  *See* Friedman Decl., Ex. E, ¶ 156.

The damages phase of the arbitration proceeded between 2013 and 2019.  *See* Friedman Decl., Ex. A, ¶¶ 3–70.  On March 8, 2019, the Secretary-General of ICSID dispatched the Tribunal's Award.  The Award incorporates by reference the 2013 Decision and the 2017 Decision.  *See id.* at ¶¶ 38, 43, 1009.  The Tribunal's Award was unanimous.

The Tribunal awarded Petitioners monetary damages in the amount of US$8,733,046,155, together with post-award interest, to begin accruing 60 days after the issuance of the Award until payment in full.  The Tribunal also ordered Venezuela to reimburse Petitioners for a portion of their legal fees and ICSID arbitration costs, in an additional amount of US$21,861,000.[5]  The full current amount of the Award is therefore US$8,754,907,155.  *See* Friedman Decl., ¶ 8.

The Tribunal's unanimous Award was the culmination of an arbitration proceeding that lasted over a decade.  During that time, the parties submitted over 3000 pages of written pleadings, 28 witness statements, 45 reports by damages and other experts, and nearly 2000 exhibits and legal authorities.  The parties also participated in over 30 days of hearings, at which they made legal submissions and examined witnesses and experts before the Tribunal.  Venezuela was actively represented by counsel throughout the Arbitration, namely attorneys of the law firm Curtis, Mallet-Provost, Colt & Mosle LLP.  *Id.* at ¶ 9.

---

[5]  The arbitration costs were paid through advance payments to ICSID.  The unused portion of that advance is to be refunded to Petitioners by ICSID.  Therefore, the total administrative costs for which Venezuela is to reimburse Petitioners will be reduced slightly.  Petitioners will update the Court once the amount of the refund by ICSID is known.  *See* Friedman Decl., ¶ 8 n.2.

**ARGUMENT**

**I.     The Award Must Be Given Full Faith And Credit Pursuant To 22 U.S.C. § 1650a**

Article 54(1) of the ICSID Convention provides that the United States, along with all other Contracting States, "shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." Friedman Decl., Ex. B, Art. 54(1). Pursuant to this obligation, the United States enacted implementing legislation that requires the United States District Courts to give full faith and credit to ICSID awards. This implementing legislation is codified at 22 U.S.C. § 1650a. It provides that "[t]he pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States," 22 U.S.C. § 1650a(a), and grants the United States District Courts exclusive jurisdiction over actions brought to recognize and enforce ICSID awards, 22 U.S.C. § 1650a(b).

In *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131 (D.D.C. 2012), this Court considered the statutory regime governing the enforceability of ICSID awards. The Court held that it was "*required* by statute to give the Award full faith and credit and confirm it accordingly." *Duke Energy*, 904 F. Supp. 2d at 133 (emphasis in original). The Award in this case is unambiguous with respect to Venezuela's liability and the sum awarded. Accordingly, 22 U.S.C. § 1650a requires that this Court give the Award full faith and credit and order its recognition and enforcement.

**II.    This Court Has Jurisdiction To Recognize And Enforce The Award Because Venezuela Does Not Benefit From Sovereign Immunity**

Venezuela is not entitled to immunity from Petitioners' claim.

First, Venezuela may not assert sovereign immunity because the "arbitral award exception" in the Foreign Sovereign Immunities Act ("FSIA") applies to this action. That exception provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— . . .
>
> (6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if . . . (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards . . . .

28 U.S.C. § 1605(a)(6).

That exception to immunity applies here, because the Award is governed by the ICSID Convention, a treaty in force for the United States "calling for the recognition and enforcement of arbitral awards." *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104–05 (2d Cir. 2017) (stating that the "arbitral award exception" applies to actions to enforce ICSID awards); *Continental Casualty Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) (concluding that there is no doubt that ICSID awards fall within the "arbitral award exception"). In accepting that the FSIA's "arbitral award exception" applies to the recognition and enforcement of ICSID awards, the Second Circuit noted that "every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA has concluded that they do." *Blue Ridge Invs., L.L.C.*, 735 F.3d at 85 (collecting cases).

Second, and independently, Venezuela has waived sovereign immunity pursuant to the FSIA's "implied waiver" provision, which states:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver; . . . .

28 U.S.C. § 1605(a)(1).  Venezuela impliedly waived its sovereign immunity with respect to actions to recognize and enforce ICSID awards by becoming a Contracting State to the ICSID Convention.  Article 54 of the ICSID Convention contains the implied waiver; it obliges each Contracting State to "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories."  Friedman Decl., Ex. B, Art. 54(1).

In *M.B.L. Int'l Contractors, Inc. v. Republic of Trin. & Tobago*, this Court recognized that Contracting States to the ICSID Convention have waived their sovereign immunity by implication with respect to recognition and enforcement actions.  725 F. Supp. 52, 55–56 (D.D.C. 1989).  In that case, the Court observed that a contrary holding would "defeat the very purpose of the [ICSID] Convention which is to provide for the enforcement of foreign arbitration awards," and that Contracting States to the ICSID Convention "must have contemplated the participation of the United States courts for enforcement of arbitration awards under the [ICSID] Convention notwithstanding" sovereign immunity.  *Id.*; *see also Blue Ridge Invs., L.L.C.*, 735 F.3d at 84.  Thus, in becoming a Contracting State to the ICSID Convention, Venezuela must have contemplated enforcement actions in other Contracting States, including in the United

States, and has therefore waived its sovereign immunity with respect to the recognition of ICSID awards pursuant to 28 U.S.C. § 1605(a)(1).[6]

Because Venezuela is not entitled to invoke its sovereign immunity in this action, this Court has subject matter jurisdiction under 28 U.S.C. § 1330(a) to recognize and enforce the Award.

By this action, Petitioners are complying with the FSIA's requirements for service, personal jurisdiction, and venue. *See, e.g.*, *Micula v. Gov't of Romania*, 104 F. Supp. 3d 42 (D.D.C. 2015). Petitioners have filed this plenary proceeding and will effect service of process on Venezuela in accordance with 28 U.S.C. § 1608(a), including, if required, through the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, which entered into force for Venezuela on July 1, 1994.[7] Under the FSIA, personal jurisdiction over a foreign State is established as a result of the Court having subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) and the foreign State having been properly served with process pursuant to 28 U.S.C. § 1608. *See GSS Group Ltd. v. Nat'l Port Authority*, 680 F.3d 805, 811 (D.C. Cir. 2012). Foreign States do not enjoy any other limits on personal jurisdiction. *See id.* at

---

[6]     While the arbitration was pending, Venezuela withdrew from the ICSID Convention, effective on July 25, 2012. However, all of the rights of Petitioners and obligations of Venezuela that were at issue in the underlying arbitration, and which Petitioners seek to have recognized and enforced by this Petition, arose before Venezuela's denunciation took effect and were therefore unaffected by it. *See* Friedman Decl., Ex. B, Art. 72 ("Notice [of denunciation] by a Contracting State . . . shall not affect the rights or obligations under this Convention . . . arising out of consent to the jurisdiction of the Centre given by one of them before such notice was received by the depositary."). In the arbitration, Venezuela raised no objection to the Tribunal's jurisdiction based on the State's subsequent denunciation of the ICSID Convention. *See* Friedman Decl., ¶ 6.

[7]     *See* Status Table, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

813 (citing *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 98–99 (D.C. Cir. 2002)); *see also TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 300 (D.C. Cir. 2005).  Finally, as this is a civil action against a foreign State, venue is proper in this Court.  *See* 28 U.S.C. § 1391(f)(4).

The FSIA therefore provides that this Court has subject matter jurisdiction to enforce the Award, has personal jurisdiction over Venezuela, and is the proper venue for this action.

**III.    The Court Should Not Entertain Any Substantive Challenges To The Award**

The Court should not entertain any substantive challenges to the Award notwithstanding that this recognition and enforcement action will proceed on a plenary basis.  *See Mobil Cerro Negro*, 863 F.3d at 117–18 (noting that a plenary proceeding to recognize and enforce an ICSID award does not allow a respondent to put forth substantive objections or defenses grounded in the Federal Arbitration Act).  Further, Article 53(1) of the ICSID Convention prevents parties to an ICSID arbitration from challenging the substance of an award in court:

> The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention.  Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.

Friedman Decl., Ex. B, Art. 53(1).  Venezuela's sole remedies for any alleged defects in the Award are therefore contained within the ICSID Convention itself, including the ICSID annulment mechanism.  Venezuela has not yet invoked any of those remedies.  Venezuela's obligation to abide by and comply with an ICSID award, such as the Award, is limited only by a stay of enforcement, *see* Friedman Decl., Ex. B, Art. 53(1), and no such stay is in effect, *see* Friedman Decl., ¶ 11.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court enter an order: (i) recognizing the Award as a judgment of this Court pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention; (ii) enforcing the pecuniary obligations imposed by the Award by entering judgment in favor of Petitioners and against Venezuela in the full amount of the Award, presently US$8,754,907,155, plus ongoing interest as provided by the Tribunal accruing until the date of payment in full; (iii) ordering Venezuela to pay the costs of this proceeding; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: March 11, 2019
　　　 New York, New York

<div style="margin-left:40%">

Respectfully submitted,
By: ___/s/ Elliot Friedman_____

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Elliot Friedman (D.C. Bar No. NY0106)
Sam Prevatt (*pro hac vice* pending)
Cameron Russell (*pro hac vice* pending)

601 Lexington Avenue
31st Floor
New York, New York 10022
Tel:　 212-277-4000
Fax:　 212-277-4001
*elliot.friedman@freshfields.com*
*sam.prevatt@freshfields.com*
*cameron.russell@freshfields.com*

D. Brian King (*pro hac vice* pending)

New York University School of Law,
40 Washington Square South, Room 508
New York, New York 10012
Tel:　 212-992-8175
*brian.king@dbkingarbitration.com*

</div>

**KOBRE & KIM LLP**
Michael S. Kim (D.C. Bar No. 1032401)
Marcus J. Green (D.C. Bar No. 999223)
Josef M. Klazen (D.C. Bar No. 1003749)

1919 M Street, NW
Washington, DC 20036
Tel:    202-664-1900
*michael.kim@kobrekim.com*
*marcus.green@kobrekim.com*
*josef.klazen@kobrekim.com*

*Attorneys    for    ConocoPhillips    Petrozuata    B.V.,
ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of
Paria B.V.*