# EXHIBIT A

*ConocoPhillips Petrozuata B.V., et al. v. Bolivarian Republic of Venezuela*,
Case 1:19-cv-00683-CJN

# INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES
## WASHINGTON, D.C.

### IN THE ARBITRATION PROCEEDING BETWEEN

**CONOCOPHILLIPS PETROZUATA B.V.**
**CONOCOPHILLIPS HAMACA B.V.**
**CONOCOPHILLIPS GULF OF PARIA B.V.**
THE CLAIMANTS

v.

**BOLIVARIAN REPUBLIC OF VENEZUELA**
THE RESPONDENT

### ICSID Case No. ARB/07/30

_____

## DECISION ON RECTIFICATION
_____

*Members of the Tribunal*

Mr. Eduardo Zuleta, President
Professor Andreas Bucher, Arbitrator
The Hon. L. Yves Fortier, QC, Arbitrator

*SECRETARY OF THE TRIBUNAL*
Messrs. Gonzalo Flores and Francisco Grob

*Date of dispatch to the Parties: 29 August 2019*

THE PARTIES' REPRESENTATIVES

Bolivarian Republic of Venezuela

Dr. Reinaldo Enrique Muñoz Pedroza
Viceprocurador General de la República (E)
Mr. Henry Rodríguez Facchinetti
Gerente General de Litigio
Procuraduría General de la República
Bolivariana de Venezuela
Paseo Los Ilustres c/c Av. Lazo Martí
Ed. Sede Procuraduría General de la
República, Piso 8
Urb. Santa Mónica
Caracas 1040
Venezuela

Mr. George Kahale, III
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY  10178
United States of America

Mr. Alfredo De Jesús S.
De Jesús & De Jesús
Edificio Magna Corp, Piso 5
Calle 51 Este y Manuel María Icaza
Bella Vista
City of Panamá
Panamá
and
Torre Banco del Orinoco, Piso 4
Avenida Francisco de Miranda
Caracas 1060
República Bolivariana de Venezuela

Dr. Alfredo De Jesús O.
Ms. Marie Thérèse Hervella
Ms. Eloisa Falcón López
Alfredo De Jesús O. – Transnational Arbitra-
tion, Litigation & Business Law
20, rue Quentin Bauchart
75008 Paris
France

ConocoPhillips Petrozuata B.V., ConocoPhillips
Hamaca B.V. and ConocoPhillips Gulf of Paria
B.V.

Mr. Brian King
Mr. Elliot Friedman
Mr. Sam Prevatt
Mr. Lee Rovinescu
Ms. Madeline Snider
Mr. Cameron Russell
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
United States of America

Mr. Jan Paulsson
Mr. Luke Sobota
Mr. Benjamin Jones
Mr. Mihir Chattopadhyay
Three Crowns LLP
3000 K Street NW, Suite 101
Washington, D.C. 20007-5109
United States of America

Mr. Gaëtan Verhoosel
Mr. Constantine Partasides
Three Crowns LLP
New Fetter Place
8-10 New Fetter Lane
London EC4A 1AZ
United Kingdom

Ms. Laura M. Robertson
Arbitration Deputy General Counsel
Ms. Suzana M. Blades
Associate General Counsel
Mr. Alberto Ravell
Senior Legal Counsel
ConocoPhillips Company
925 N. Eldridge Pkwy.
Houston, Texas
United States of America

Mr. David Syed
Ms. Anna Crevon-Tarassova
Ms. Yun Ma
Dentons Europe CS LLP
V Celnici 1034/6
Prague 1, 110 00
Czech Republic

# TABLE OF CONTENTS

I.    Procedural Background ................................................................................................. 5

II.   The Parties ................................................................................................................... 7

A.    The Claimants .............................................................................................................. 7

B.    The Respondent ........................................................................................................... 8

III.  The Application for Rectification ............................................................................... 9

A.    Preliminary Observations ........................................................................................... 9

B.    The First Item ............................................................................................................ 11

C.    The Second Item ........................................................................................................ 17

D.    The Third Item ........................................................................................................... 19

IV.   Legal Fees and Costs ................................................................................................ 20

V.    Decision ..................................................................................................................... 21

## I.    Procedural Background

1.     This case concerns a dispute submitted to the International Centre for Settlement of Investment Disputes ("ICSID" or the "Centre") on the basis of the Agreement on Encouragement and Reciprocal Protection of Investments between the Kingdom of the Netherlands and the Republic of Venezuela signed on 22 October 1991 (the "BIT"), and the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, dated 18 March 1965 (the "ICSID Convention").

2.     The dispute relates to the interests of the Claimants in two extra-heavy oil projects located in the region in Venezuela known as the Orinoco Oil Belt (Faja Petrolífera del Orinoco) – the "Petrozuata Project" and the "Hamaca Project", and in an offshore project for the extract of light to medium crude oil – the "Corocoro Project". For each Project, the main underlying legal basis was set up in an Association Agreement, concluded between one of the ConocoPhillips' subsidiaries and one of the subsidiaries of Petróleos de Venezuela, S.A. ("PDVSA").

3.     On 1 May 2007, a PdVSA subsidiary took control over operations at each of the Projects based on Decree No. 5.200 dated 26 February 2007 (C-5, R-40). On 26 June 2007, the four-month period for reaching agreement set in the Decree expired and Venezuela nationalised ConocoPhillips' interests in the Projects.

4.     On 2 November 2007, the Claimants submitted to ICSID a Request for Arbitration against the Bolivarian Republic of Venezuela ("Venezuela" or "the Respondent") pursuant to Article 36 of the ICSID Convention. On 13 December 2007, the Secretary-General of ICSID registered the Request for Arbitration in accordance with Article 36(3) of the ICSID Convention.

5.     The Tribunal was constituted on 23 July 2008. It was then reconstituted on 1 February 2010, on 10 August 2015, and lastly on 22 April 2016, when it was composed of Mr. Eduardo Zuleta, a Colombian national, as presiding arbitrator, the Hon. L. Yves Fortier, QC, a Canadian national, and Professor Andreas Bucher, a Swiss national, both as arbitrators.

6.     In their Request for Arbitration and throughout their subsequent briefs, the Claimants requested that the Tribunal, *inter alia*, declare that Venezuela has breached Article 6 of the BIT by unlawfully expropriating and/or taking measures equivalent to expropriation with respect to ConocoPhillips' investments in Venezuela, and order Venezuela to pay damages to ConocoPhillips for its breaches of the BIT.

7.     On 3 September 2013, the Tribunal issued a Decision on Jurisdiction and the Merits, and on 17 January 2017 it rendered an Interim Decision.

8.      Shortly after rendering its Interim Decision on 17 January 2017, the Tribunal continued with the final phase of this proceeding, relating to quantum. This phase was concluded by the Award dated 8 March 2019.

9.      On 16 April 2019, within the time limit set at 45 days by Article 49(1) of the ICSID Convention and Arbitration Rule 49(1), an Application for Rectification was submitted by the Law Firm Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), purporting to act on behalf of the Respondent. Together with the Application Curtis enclosed the power of attorney to represent the Respondent in this case, dated 5 April 2019 and granted by Mr. José Ignacio Hernández González, Procurador Especial de la República Bolivariana de Venezuela. The Application relates to three clerical and arithmetical issues emerging from the Tribunal's calculations relating to the windfall profit tax and ConocoPhillips Petrozuata B.V.'s compensation under Section 9.07 of the Petrozuata Association Agreement.

10.     On 18 April 2019, the ICSID Secretary-General confirmed receipt of the Application of 16 April 2019 and registered the request pursuant to Arbitration Rule 49(2)(a).

11.     On 19 April 2019, and also within the above mentioned 45-day time limit, a letter was submitted by the Law Firm De Jesús & De Jesús, Alfredo De Jesús S. and Alfredo De Jesús O. ("De Jesús"), making reference to the Notice of Registration dated 18 April 2019 and the Application for Rectification, both documents being attached to the letter.

12.     The ICSID Secretary-General confirmed receipt of the said letter the same day. It took note of the request to register said Application pursuant to Article 49 of the ICSID Convention and ICSID Arbitration Rule 49. To the Secretary-General's letter was attached the Notice of Registration that had been issued on 18 April 2019.

13.     In their letter dated 20 April 2019, the Claimants expressed that they consented to the Tribunal addressing the points raised in the Application for Rectification received by ICSID on 16 April 2019. They also submitted that in light of their consent, the Tribunal's review of the Application can be undertaken without deciding the issue of representation of the Bolivarian Republic of Venezuela.

14.     By letter dated 9 May 2019, De Jesús (Paris) indicated to the Tribunal that Mr. David Syed of the Law Firm Dentons Europe SC LLP (Prague) ("Dentons") shall henceforth be part of the defence team of the Respondent. The letter instructed that any communication relating to the present proceeding shall be transmitted to Mr. Reinaldo Enrique Muñoz Pedroza, Procurador General de la República (E) and to Mr. Henry Rodríguez Facchinetti, Gerente General de Litigio. The letter also included a number of addresses relating to members of the De Jesús Law Firm and attached a power of representation dated 29 April 2019 signed by Mr. Reinaldo Enrique Muñoz Pedroza,

Procurador General de la República Bolivariana de Venezuela (E) in favor of the representatives of the Law Firms De Jesús and Dentons Europe SC LLP ("De Jesús & Dentons").

15.    In a further letter dated 10 May 2019, the Claimants responded to the Respondent's 16 April 2019 Application for Rectification. They declared that they agree with the first and the third issues raised by the Respondent. As for the second issue, they submitted that the Respondent had not proven the error it alleged. The explanations provided by the Claimants in this respect will be considered in more detail below. The Claimants concluded that in light of their position, no further submissions on the Respondent's Application were necessary. Moreover, since both declared representatives of the Bolivarian Republic of Venezuela had submitted the same Application, the Claimants suggested that the Tribunal need not address any issues related to the Respondent's representation.

16.    The Respondent, through the Curtis Law Firm's letter dated 13 May 2019, responded to the Claimants' letter of 10 May 2019 that they agreed there was no need for further submissions with regard to the Application for Rectification since the Claimants have agreed to the first and third mistakes raised by the Respondent and the second mistake was crystal clear.

17.    In response to the Tribunal's question as to whether either counsel had any additional comments on the items for rectification submitted in the Application for Rectification filed with the Tribunal, the only reply received was the Claimants' letter dated 29 May 2019, noting that the Respondent had failed to prove its claim in respect of its asserted second error.

## II.    The Parties

### A.    The Claimants

18.    The Claimants and Parties to this proceeding on rectification of the Award dated 8 March 2019 are ConocoPhillips Petrozuata B.V. ("CPZ"), ConocoPhillips Hamaca B.V. ("CPH"), and ConocoPhillips Gulf of Paria B.V. ("CGP" – collectively, "ConocoPhillips" or "the Claimants").

19.    The Award includes the name of another Claimant, the ConocoPhillips Company, the parent company of the three subsidiaries mentioned above. Since 3 September 2013, when this Company's claims were dismissed in the Tribunal's Decision on Jurisdiction and the Merits, it no longer participated in this proceeding. The name of this Company was included as a Party in the Award for the mere purpose of incorporating the 2013 Decision into the Award and assessing the impact of such dismissal on the allocation of legal fees and costs (paras. 39 and 1000/1001). Therefore, the Conoco Phillips Company is not a Party to this proceeding on the rectification of the Award as this proceeding refers to matters that have nothing to do with this Company's position and claims.

B.    <u>The Respondent</u>

20.    There is no dispute in the present proceeding about the proper identification of the Respondent and Applicant as the Bolivarian Republic of Venezuela ("the Respondent" or "Venezuela").

21.    An issue of representation results from the different documents submitted as powers of representation on behalf of Venezuela to this Tribunal.

22.    One document submitted by the Law Firm Curtis as a power of attorney was issued by Mr. José Ignacio Hernández González, Procurador Especial de la República Bolivariana de Venezuela, on 5 April 2019.

23.    Another document was referred to by De Jesús in their letter dated 19 April 2019, as a power of attorney granted on 6 March 2019 by Mr. Reinaldo Muñoz Pedroza, signed as the Republic's Acting Attorney General. This Power of Attorney had been submitted on 7 March 2019. It expressly provided for the revocation of the mandate previously granted to Curtis by the Office of the Attorney General of the Bolivarian Republic of Venezuela. After having recalled Curtis' lack of power resulting from this revocation, the letter declares that the De Jesús Law Firm herewith submits "on behalf of the Republic the Application that was previously submitted by our colleagues from Curtis which you will find enclosed." Counsel also requested that the said Application be registered pursuant to Article 49 of the ICSID Convention and ICSID Arbitration Rule 49. The terms of this letter purport to demonstrate that the De Jesús power to act as attorney for the Respondent is based on the power issued on 6 March 2019, and that the revocation of the Curtis' power formerly granted by the Office of the Attorney General of the Republic had the effect that Curtis was no longer holding any power to act on behalf of the Bolivarian Republic of Venezuela.

24.    A supplementary document submitted as a power of attorney dated 29 April 2019 by Mr. Reinaldo Enrique Muñoz Pedroza, Procurador General de la República (E), was issued in favor of both Law Firms, De Jesús (Panama) and Dentons (London/Prague).

25.    The submission of different documents as powers of attorneys may raise an issue of representation, opposing on two sides law firms both claiming to be the Respondent's representative. However, the true issue before the Tribunal is to identify the Parties, and in particular the Respondent, and to identify its position that must be addressed through the Tribunal's findings. In this respect, the Tribunal is not faced with any conflicting position or submission. Firstly, as both representatives state that they act on behalf of the Respondent, there is no dispute that they represent the same Party, the Bolivarian Republic of Venezuela. There is no other individual or firm claiming any similar power on behalf of Venezuela. Secondly, there is no conflict about the substance of the issues on rectification before the Tribunal. Indeed, on both sides of the representatives declaring to act on behalf of the Respondent, the Application for Rectification is identical to the Request dated

16 April 2019. Therefore, the issue related to the correct designation of the Respondent's representatives is moot and does not require any decision from the Tribunal.

26.      A requirement to verify counsel's power of attorney does not result either from the usual listing of the "Parties' representatives" on the second page of the Decision's introductory part. Such a list is usual but it is not required with the terms used in its heading. Indeed, Article 48 of the ICSID Convention does not contain such a requirement, and Arbitration Rule 47(1)(d) requires that an award shall contain "the names of the agents, counsel and advocates of the parties", with no reference being made to the power of representation or its verification. Moreover, it has not been required on behalf of either Party that the content and effects of the powers of attorney be considered as a question submitted to the Tribunal with the effect that this Tribunal would be required to decide the issue pursuant to Article 48(3) of the ICSID Convention and Arbitration Rule 47(1)(i). Hence, the list of "Parties' representatives" provided in this Decision does not imply a decision in respect of a legal question submitted to the Tribunal. Therefore, this Decision sets up this list by including the identity of the Parties, law firms and counsel that have participated in this proceeding, and thus accept that they will receive notification of this Decision, without making any ruling about the validity of the powers of attorney that have been submitted.

## III.    The Application for Rectification

### A.    Preliminary Observations

27.      The Respondent's Application is based on Article 49(2) of the ICSID Convention that reads as follows:

> The Tribunal upon the request of a party made within 45 days after the date on which the award was rendered may after notice to the other party decide any question which it had omitted to decide in the award, and shall rectify any clerical, arithmetical or similar error in the award. Its decision shall become part of the award and shall be notified to the parties in the same manner as the award. The periods of time provided for under paragraph (2) of Article 51 and paragraph (2) of Article 52 shall run from the date on which the decision was rendered.

28.      The Respondent and Applicant raises three arithmetical issues that are related to and have effects upon the following parts of the Award's decision in paragraph 1010:

> 1.      That the Respondent, the Bolivarian Republic of Venezuela, shall pay as compensation for the expropriation enforced on 26 June 2007 in breach of Article 6 of the Agreement on Encouragement and Reciprocal Protection of Investments between the Kingdom of the Netherlands and the Republic of Venezuela dated 22 October 1991, the following amounts to the Claimants:

a.      ConocoPhillips Petrozuata B.V. (CPZ) US$ 3,386,079,057;

b.      ConocoPhillips Hamaca B.V. (CPH) US$ 4,498,085,150; and

c.      ConocoPhillips Gulf of Paria B.V. (CGP) US$ 562,140,959.

2.      The above mentioned amounts shall be paid together with interest at an annual rate of 5.5%, compounded annually, until the date of full and final payment of these amounts.

3.      The Bolivarian Republic of Venezuela shall pay to ConocoPhillips Petrozuata B.V. (CPZ) the amount of US$ 286,740,989 based on the compensation provisions of the Petrozuata Association Agreement, together with simple interest until the date of full and final payment at 12-month LIBOR or any other comparable rate in case LIBOR should be discontinued in the future.

29.      The three items raised in the Respondent's Application are all related to the Windfall Profit Tax (WPT), including its calculation (first item) and its impact on the compensation owed to ConocoPhillips Petrozuata B.V. (CPZ) on the basis of Section 9.07 of the Petrozuata Association Agreement (second and third items). In their letter dated 10 May 2019, the Claimants have declared that in respect of the first and the third items, the Award should be corrected as requested by the Respondent, while they submit that the Respondent's allegation in respect of the second item is unsupported but nonetheless left in the hands of the Tribunal.

30.      Article 49(2) of the ICSID Convention, quoted above, requires a party to submit a request to have any clerical, arithmetical or similar error in the award rectified by the Tribunal. The provision does not mention that the Tribunal could undertake a rectification of such an error on its own motion. This is not the issue in the instant case. The Respondent has alleged an error in the calculation of the amounts listed in column 4 of the table of paragraph 785. It invokes Article 49(2) and requests the Tribunal to proceed with the rectification of the error. However, if in the correction of the error of an amount identified by the Respondent the Tribunal finds that the same amount includes another error, the Tribunal could not simply correct the error invoked by the Respondent knowing that another error exists in the same amount and that it has an effect in the Award. In case the requesting party has correctly identified a clerical or arithmetical error in an amount, it is the Tribunal's duty not only to correct the error invoked by the requesting party but other errors in the same amount, so that all erroneous components of the Award related to the same amount are corrected. Otherwise the Tribunal would be correcting a mathematical error in an amount but leaving in place another mathematical error related to the same amount. This is part of the Tribunal's inherent decision-making power that it exercises independently from the party's application. If this is done, as in the instant case, the Tribunal must proceed with the rectification in such a way that the total outcome of the Award is correct. For example, (1) if the requesting party identifies the error correctly, but declares that it is not able to make the appropriate correction and to provide a number, the Tribunal must proceed with the rectification and determine the solution; and (2) if the requesting party identifies the error correctly and offers a rectified number or amount and the Tribunal considers that there is indeed an error but that the calculation by the requesting party resulting

from the error is incorrect, the Tribunal, while accepting the error, can proceed with the rectification based on its own assessment of the correct solution, which may not be the same as the one which has been submitted by the requesting party. Both situations can be seen when considering the Respondent's Application and the respective parts of the Award.

### B.    The First Item

31.    Firstly, the Respondent points to errors contained in the Tribunal's calculations of the Windfall Profit Tax (WPT) in paragraph 773 of the Award in respect of each of the three Projects. The Tribunal notes that in order to achieve its WPT figures, the Tribunal applied in each case its calculated rate to the production figures. However, in so doing, the Tribunal omitted to include two decimals in its calculations for certain years. For instance, for the year 2012 in Petrozuata, the correct number should have been US$ 5,430,000 (36,200,000 x 0.15) instead of US$ 54,300. Another example is the year 2028 for Hamaca, where the correct number should have been US$ 106,872,000 (58,400,000 x 1.83) instead of US$ 1,068,720.

32.    In the case of Petrozuata, this error affects, according to the Respondent, the estimated values of the WPT payable by the Project for the years 2010 and 2021 through 2026[1]. The impact of this error on the compensation amount as set forth in paragraph 1010(1) of the Award is a reduction of US$ 13,098,972 in the case of Petrozuata (CPZ).

33.    The same pattern is noted in respect of Hamaca, where the affected yearly amounts for the WPT are those for 2010 and 2021 through 2036[2]. The impact on the total compensation allocated in respect of Hamaca (CPH) in paragraph 1010(1) of the Award is a reduction of US$ 54,962,316.

34.    Finally, for Corocoro, the same type of error affects the values of the WPT payable in respect of the years 2008, 2010 and 2021 through 2026[3], resulting in a total reduction in the case of Corocoro (CGP) of US$ 10,081,870.

---

[1] Thus, the figures contained in the Award, para. 773, *i.e.* US$ 68,780 (2010) and US$ 54,300 (2021), 141,180 (2022), 228,060 (2023), 231,420 (2024), 245,310 (2025) and 256,500 (2026), should become greater by adding two decimals, resulting in US$ 6,878,000 (2010) and US$ 5,430,000 (2021), 14,118,000 (2022), 22,806,000 (2023), 23,142,000 (2024), 24,531,000 (2025) and 25,650,000 (2026).

[2] The figures in the Award, para. 773, *i.e.* US$ 93,440 (2010) and US$ 87,600 (2021), 227,760 (2022), 364,920 (2023), 508,080 (2024), 648,240 (2025), 788,400 (2026), 928,560 (2027), 1,068,720 (2028), 1,208,880 (2029), 1,349,040 (2030), 1,489,200 (2031), 1,582,640 (2032), 1,769,520 (2033), 1,667,700 (2034), 1,649,700 (2035), and 1,612,500 (2036), should become greater by adding two decimals, resulting in US$ 9,344,000 (2010) and US$ 8,760,000 (2021), 22,776,000 (2022), 36,492,000 (2023), 50,808,000 (2024), 64,824,000 (2025), 78,840,000 (2026), 92,856,000 (2027), 106,872,000 (2028), 120,888,000 (2029), 134,904,000 (2030), 148,920,000 (2031), 158,264,000 (2032), 176,952,000 (2033), 166,770,000 (2034), 164,970,000 (2035), and 161,250,000 (2036).

[3] The amounts noted in the table under para. 773, *i.e.* US$ 410,810 (2008), 76,281 (2010), 10,807 (2021), 26,383 (2022), 39,488 (2023), 49,946 (2024), 61,138 (2025), and 71, 509 (2026), should become greater by adding two decimals, resulting in US$ 41,081,000 (2008), 7,628,100 (2010), 1,080,700 (2021), 2,638,300 (2022), 3,948,800 (2023), 4,994,600 (2024), 6,113,800 (2025), and 7,150,900 (2026).

35.     The Respondent adds that in addition to the corrections to be made in the tables under paragraph 773 of the Award and the final conclusion in its paragraph 1001(1), the omission of the two decimals should be also rectified in paragraphs 777, 779, 785, 954 of the Award, *i.e.* in each case where the compensation for the three Projects is impacted by the WPT. The amounts mentioned above deal with these further rectifications carried forward in all instances where net revenue, dividends and discounts are at their inception dependent on the cost item represented by the WPT. The Respondent has not submitted the corrected calculations in detail in this regard. Its Application contains an illustration for the year 2028 at Hamaca, with detailed figures that are correct[4].

36.     In their letter dated 10 May 2019, the Claimants agreed that the figures identified in the tables contained in paragraph 773 of the Award should be corrected. They also agreed with the total amount of the reductions to be adopted for each of the Projects in paragraph 1010(1) of the Award.

37.     While the Tribunal retains for due consideration the Parties' agreement on the rectification requested by the Respondent, it also notes that such an agreement is not directed to a claim or a defense raised before the Tribunal, but affects directly the Tribunal's decision. The Parties' common views must therefore be in the nature of an error in the Tribunal's calculations that the Tribunal can accept.

38.     The Tribunal notes at the outset that the Respondent's Application for Rectification does not contest the Tribunal's calculation of the volume of production, the total income and the WPT rate. The Application concerns only the last step in the calculation, being the determination of the US$ amount for the WPT based on a given rate for certain years.

39.     Taking Petrozuata as an illustration, the Respondent accepts the calculation for year 2014, noting that the rate was 10.80 and that it had to be applied to a total production of "MMB" 36,200,000 (*i.e.* barrels), resulting in an amount of US$ 390,960,000. The Respondent also notes that this is based on the calculation: 36,200,000 x 10.80.

40.     Year 2021 is one of the years for Petrozuata where an error is alleged. The Tribunal adopted a rate of 0.15 (which is not contested), and came to a result of US$ 54,300, calculated as 0.15% of 36,200,000. The Respondent contends that two decimals were omitted, because the calculation should be: 0.15 x 36,200,000 = US$ 5.430,000

41.     The Tribunal notes that the difference to which the Respondent points is not simply that it omitted two decimals for some years. The difference between the numbers in the Award and the Respondent's submission is based on a difference in understanding what the "rate" means.

---

[4] Application for Rectification, footnote 4.

42.     The Respondent uses the rate as a fraction of the total production figures (which is in most years 36,200,000 barrels). Thus, it submits that for year 2021, the rate of 0.15 has to be applied as a multiplier to the production figure of 36,200,000; in other words, the rate triggers a tax of US$ 0.15 for each barrel (= 15 cents per barrel). This results in a total of US$ 5,430,000.

43.     The Award's rate is used as a percentage of each barrel expressed in US$. Thus, each barrel triggers a tax of 0.15%, and the full production of 36,200,000 converts into a tax of 0.15% of this figure, which is US$ 54,300.

44.     On the basis of the explanations contained in the Award (paras. 723-725), the Tribunal recalls that pursuant to Decree No. 8.807 of 15 April 2008 (R-500, C-252/582), the tax was assessed at the rate of 50% equal to US$ 0.50 for every dollar that the average price to be considered exceeded US$ 70. When this reference price exceeded US$ 100, the tax went up to 60%, respectively US$ 0.60 per dollar (Art. 1 para. 2). Based on Decree No. 8.163 of 18 April 2011 (R-501, C-587), when the tax was determined by reference to a price fixed in the Budget Law, 20% (0.20 per dollar) were to be paid up to a threshold of the monthly average (extraordinary) price of Venezuelan liquid of US$ 70 per barrel (Art. 7). When prices were greater and became "exorbitant", but lower than US$ 90 per barrel, the tax went up to 80% for any price between these two amounts, and it went further up to 90% within a margin of US$ 90 to US$ 100, and 95% in respect of any amount above US$ 100 (Art. 9). As per Decree No. 40.114, effective as from 21 February 2013 (R-502, C-600), the initial rate of 20% went up from the Budget Law price to US$ 80 per barrel (extraordinary price – Art. 7). From there, when prices became higher and were considered to be "exorbitant", a tax of 80% applied up to the threshold of US$ 100, and above, 90% applied up to the level of US$ 110. When prices went higher, equal or greater than US$ 110, the tax rate was 95% (Art. 9).

45.     The Tribunal notes that while for each relevant layer, percentages of a certain amount of US$ are used, the resulting rate is determined in terms of US$, equally applicable at the level of each layer, to the extent applicable (Art. 1.3 of Decree No. 8.807 of 2008). Thus, when taking again the example of year 2014, which is not challenged, the rate of 10.80 represents an amount of 10.80 US$ per barrel[5] to be applied to a production of 36,200,000 barrels. This results in a WPT of US$ 390,960,000, as mentioned above.

46.     The Respondent accepts that the increase in certain yearly amounts of WPT has an immediate impact on the net revenue per year, combined with the output based on the 50% income tax. As a further consequence, the dividends together with the Update (9.75%) and the Discount (17.25%) must also be rectified. This affects the amounts listed in the tables under paragraphs 777,

---

[5] With more details, the rate of 10.80 is composed of 20% of 1 US$ up to a (extraordinary) price of US$ 80 per barrel (= 4$/b), and of 80% of every US$ for the portion between US$ 80 per barrel and the difference between the Venezuela Basket (US$ 88.54) and US$ 80/b (= 6.83 US$). See also Brailovsky/Flores, Appendice BF-406, Special Contribution.

779, and 954 of the Award. To the extent relevant, these amounts are to be corrected as follows (*italics*):

| | WPT | Subtotal before Income Tax | Income Tax 50% | Net Revenue | Dividends CPZ - 50.1% | Dividends together with Update (9.75%) and Discount (17.25%) |
|---|---|---|---|---|---|---|
| | | | Petrozuata | | | |
| 2007 ½ | -- | 472,948,727 | 236,474,363 | 236,475,364 | 118,474,157 | 130,025,387 |
| 2008 | 219,560,559 | 1,339,837,289 | 669,918,644 | 669,918,645 | 335,629,241 | 368,353,092 |
| 2009 | 0 | 755,684,867 | 377,842,433 | 377,842,434 | 189,299,059 | 207,755,717 |
| 2010 | *6,878,000* | *1,183,528,671* | *591,764,335* | *591,764,336* | *296,473,932* | *325,380,140* |
| 2011 | 965,816,000 | 877,146,299 | 438,573,149 | 438,573,150 | 219,725,148 | 241,148,350 |
| 2012 | 1,165,640,000 | 934,845,779 | 467,422,889 | 467,422,890 | 234,178,868 | 257,011,308 |
| 2013 | 836,220,000 | 1,115,988,798 | 557,994,399 | 557,994,399 | 279,555,194 | 306,811,825 |
| 2014 | 390,960,000 | 1,007,280,519 | 503,640,259 | 503,640,260 | 252,323,770 | 276,925,338 |
| 2015 | 0 | - 123,367,561 | -- | - 61,683,780 | - 30,903,574 | 0 |
| 2016 | 0 | 357,685,595 | 178,842,797 | 178,842,798 | 89,600,242 | 98,336,266 |
| 2017 | 0 | 549,182,278 | 274,591,139 | 274,591,139 | 137,570,161 | 150,983,252 |
| 2018 | 0 | 704,658,759 | 352,329,379 | 352,329,380 | 176,517,019 | 193,728,428 |
| 2019 | 0 | 744,517,307 | 372,258,653 | 372,258,654 | 176,481,586 | 150,517,344 |
| 2020 | 0 | 827,442,366 | 413,721,183 | 413,721,183 | 207,274,313 | 150,766,885 |
| 2021 | *5,430,000* | *823,530,319* | *411,765,159* | *411,765,160* | *206,294,345* | *127,982,099* |
| 2022 | *14,118,000* | *894,229,272* | *447,114,636* | *447,114,636* | *224,004,433* | *118,527,135* |
| 2023 | 22,806,000 | *1,012,188,225* | *506,094,112* | *506,094,113* | *253,553,151* | *114,419,292* |
| 2024 | 23,142,000 | *701,136,070* | *350,568,035* | *350,568,035* | *175,634,586* | *67,598,563* |
| 2025 | 24,531,000 | *595,511,663* | *297,755,831* | *297,755,832* | *149,175,672* | *48,967,855* |
| 2026 | 25,650,000 | *509,293,634* | *254,646,817* | *254,646,817* | *127,578,055* | *35,717,141* |
| Total | | | | | | *3,370,955,417* |
| | | | | | *Reduction:* | *15,123,640* |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |

14

| | WPT | Subtotal before Income Tax | Income Tax 50% | Net Revenue | Dividends CPH - 40% | Dividends together with Update (9.75%) and Discount (17.25%) |
|---|---|---|---|---|---|---|
| | | | Hamaca | | | |
| 2007 ½ | -- | 1,177,904,466 | 588,952,233 | 588,952,233 | 235,580,893 | 258,550,030 |
| 2008 | 397,424,887 | 1,777,164,401 | 888,582,200 | 888,582,201 | 355,432,880 | 390,087,586 |
| 2009 | 0 | 694,921,399 | 347,460,699 | 347,460,700 | 138,984,280 | 152,535,247 |
| 2010 | 9,344,000 | 1,959,597,178 | 979,798,589 | 979,798,589 | 391,919,436 | 430,131,581 |
| 2011 | 1,558,112,000 | 1,421,764,146 | 710,882,073 | 710,882,073 | 284,352,829 | 312,077,230 |
| 2012 | 1,880,480,000 | 1,166,185,308 | 583,092,654 | 583,092,654 | 233,237,062 | 255,977,676 |
| 2013 | 1,349,040,000 | 1,839,695,472 | 919,847,736 | 919,847,736 | 367,939,094 | 403,913,156 |
| 2014 | 630,720,000 | 1,476,313,552 | 738,156,776 | 738,156,776 | 295,262,710 | 324,050,824 |
| 2015 | 0 | - 513,042,377 | -- | - 256,521,188 | - 102,608,475 | 0 |
| 2016 | 0 | 412,128,713 | 206,064,356 | 206,064,357 | 82,425,743 | 90,462,253 |
| 2017 | 0 | 700,796,756 | 350,398,378 | 350,398,378 | 140,159,351 | 153,824,888 |
| 2018 | 0 | 1,062,940,668 | 531,470,334 | 531,470,334 | 212,588,134 | 233,315,477 |
| 2019 | 0 | 1,150,109,152 | 575,054,576 | 575,054,576 | 230,021,830 | 196,180,665 |
| 2020 | 0 | 1,243,615,104 | 621,807,552 | 621,807,552 | 248,723,021 | 180,915,785 |
| 2021 | 8,760,000 | 1,335,187,620 | 667,593,810 | 775,803,389 | 267,037,524 | 165,666,309 |
| 2022 | 22,776,000 | 1,288,249,496 | 644,124,748 | 644,124,748 | 257,649,899 | 136,329,911 |
| 2023 | 36,792,000[6] | 1,278,145,652 | 639,072,826 | 639,072,826 | 255,629,130 | 115,356,106 |
| 2024 | 50,808,000 | 1,416,048,168 | 708,024,084 | 708,024,084 | 283,209,634 | 109,002,245 |
| 2025 | 64,824,000 | 1,348,751,683 | 674,375,841 | 674,375,842 | 269,750,337 | 88,547,248 |
| 2026 | 78,840,000 | 1,351,804,199 | 675,902,099 | 675,902,100 | 270,360,840 | 75,691,044 |
| 2027 | 92,856,000 | 1,223,543,715 | 611,771,857 | 611,771,858 | 244,708,743 | 58,429,537 |
| 2028 | 106,872,000 | 1,283,575,231 | 641,787,615 | 641,787,616 | 256,715,046 | 52,278,800 |
| 2029 | 120,888,000 | 1,380,249,747 | 690,124,873 | 690,124,874 | 276,049,950 | 47,945,316 |
| 2030 | 134,904,000 | 1,515,079,263 | 757,539,631 | 757,539,632 | 303,015,853 | 44,885,918 |
| 2031 | 148,920,000 | 1,551,606,778 | 775,803,389 | 775,803,389 | 310,321,356 | 39,205,255 |
| 2032 | 158,264,000 | 1,541,464,294 | 770,732,147 | 770,732,147 | 308,292,859 | 33,218,708 |
| 2033 | 176,952,000 | 1,642,888,810 | 821,444,405 | 821,444,405 | 328,577,762 | 30,195,721 |
| 2034 | 166,770,000 | 1,639,285,832 | 819,642,916 | 819,642,916 | 327,857,166 | 25,696,753 |
| 2035 | 164,970,000 | 1,586,696,941 | 793,348,470 | 793,348,471 | 317,339,388 | 21,213,235 |
| 2036 | 161,250,000 | 1,529,354,731 | 764,677,365 | 764,677,366 | 305,870,946 | 17,438,381 |
| Total | | | | | | 4,443,122,885 |
| | | | | | Reduction: | 54,962,265 |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |

---

[6] The number given in the Award, paras. 773 and 777 for year 2023 (364,920) should have been : 367,920. This correction is carried forward here, resulting in US$ 36,792,000.

| | WPT[7] | Subtotal before Income Tax | Income Tax 50% | Net Revenue | Dividends CPG - 32.2075% | Dividends together with Update (9.75%) and Discount (17.25%) |
|---|---|---|---|---|---|---|
| | | | | Corocoro | | |
| 2008 | *41,081,040* | *72,306,753* | *36,153,376* | *36,153,377* | *11,644,099* | *12,779,399* |
| 2009 | 0 | 198,427,369 | 99,213,684 | 99,213,685 | 31,954,307 | 35,069,852 |
| 2010 | *7,628,160* | *271,960,667* | *135,980,333* | *135,980,334* | *43,795,866* | *48,065,963* |
| 2011 | 352,549,500 | 371,608,635 | 185,804,317 | 185,804,318 | 59,842,926 | 65,677,611 |
| 2012 | 434,023,800 | 345,143,943 | 172,571,971 | 172,571,972 | 55,581,118 | 61,000,277 |
| 2013 | 308,061,600 | 435,348,762 | 217,674,381 | 217,674,381 | 70,107,476 | 76,942,955 |
| 2014 | 138,661,200 | 379,569,540 | 189,784,770 | 189,784,770 | 61,124,930 | 67,084,611 |
| 2015 | 0 | - 54,169,435 | -- | - 27,084,718 | - 8,723,311 | 0 |
| 2016 | 0 | 131,613,037 | 65,806,518 | 65,806,519 | 21,194,635 | 23,261,117 |
| 2017 | 0 | 173,351,188 | 86,675,594 | 86,675,594 | 27,916,042 | 30,637,856 |
| 2018 | 0 | 194,627,214 | 97,313,607 | 97,313,607 | 31,342,280 | 34,398,152 |
| 2019 | 0 | 172,728,721 | 86,364,360 | 86,364,361 | 27,815,802 | 23,723,499 |
| 2020 | 0 | 170,709,052 | 85,354,526 | 85,354,526 | 27,490,559 | 19,996,042 |
| 2021 | *1,080,750* | *157,088,929* | *78,544,464* | *78,544,465* | *25,297,209* | *15,694,031* |
| 2022 | *2,638,350* | *142,774,386* | *71,387,193* | *71,387,193* | *22,992,030* | *12,165,739* |
| 2023 | *3,948,840* | *127,127,973* | *63,563,986* | *63,563,987* | *20,472,371* | *9,238,435* |
| 2024 | *4,994,670* | *108,920,164* | *54,460,082* | *54,460,082* | *17,540,231* | *6,750,916* |
| 2025 | *6,113,880* | *101,064,437* | *50,532,218* | *50,032,219* | *16,275,164* | *5,342,425* |
| 2026 | *7,150,950* | *93,828,397* | *46,914,198* | *46,914,199* | *15,109,891* | *4,230,211* |
| Total | | | | | | 552,059,091 |
| | | | | | *Reduction:* | *10,081,868* |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |

47.    The Tribunal notes that the results of its calculation are very close for Hamaca and Corocoro to the figures submitted by the Respondent, while there appears to be a difference in respect of Petrozuata. The source of this difference cannot be identified on the basis of the Respondent's Application that does not contain detailed calculations in this respect.

48.    In conclusion, the Tribunal accepts the reduction requested by the Respondent, and agreed by the Claimants, based on an error in the calculation of the WPT for some years, for the total amounts of US$ 15,123,640 in the case of Petrozuata (CPZ), of US$ 54,962,265 in respect of Hamaca (CPH), and of US$ 10,081,868 for Corocoro (CGP). As a consequence, the amounts mentioned in paragraph 1010(1) of the Award are rectified as follows:

a.    ConocoPhillips Petrozuata B.V. (CPZ) US$ 3,370,955,417;
b.    ConocoPhillips Hamaca B.V. (CPH) US$ 4,443,122,885;
c.    ConocoPhillips Gulf of Paria B.V. (CGP) US$ 552,059,091.

---

[7] The Tribunal uses the correct numbers for the two last digits instead of the simple addition of two decimals.

C.    The Second Item

49.    Secondly, the Respondent addresses the table in paragraph 785 in respect of the compensation to be provided in the case of Petrozuata. This error is alleged to result from the Award's option to determine the compensation to be paid under paragraph 1010(3) of the Award as corresponding to the entirety of the Petrozuata Project, and not to CPZ's interest in this Project, which is 50.1%. The "significant economic damage" to the shareholders other than the Class A Privileged shareholders cannot be based on numbers that correspond to the total amount of the WPT paid by both PDVSA and CPZ. Therefore, the Tribunal's calculations in paras. 785, 829 and 1010(3) need to be proportionally adjusted to reflect the correct percentage of CPZ's ownership in the Petrozuata Project, as this was correctly made by the Tribunal in paragraph 779 of the Award with respect to the calculation of dividends.

50.    The Claimants submit in their letter dated 10 May 2019 that the Respondent's allegation was unsupported, as it had not shown that CPZ's ownership interest of 50.1% has not been taken into account in the calculation. The Claimants note that the Tribunal may explain precisely how it accounted for this interest and that, therefore, this second issue is entirely in the hands of the Tribunal. For the Respondent, in the letter dated 13 May 2019 submitted by Curtis, it is untenable to argue that the Respondent has not shown that CPZ's ownership interest was not taken into account by the Tribunal, as the methodology and pertinent calculations are set out in paragraphs 780-785 of the Award. The Claimants reply in their letter dated 29 May 2019 that these paragraphs demonstrate that the Tribunal was well aware of the Association Agreement's concept of "Significant Economic Damage", which by definition applies only to the interests of CPZ.

51.    The benefit of the compensation provided in Section 9.07 of the Petrozuata Association Agreement accrues to the Class B Shareholder only, and not to the Class A Shareholder (cf. paras. 163, 781). The significant economic damage is taken into account in respect of the Shareholders other than the Class A Shareholders (Sec. 1.01); such damage is determined by calculating the dividends that a Class B Shareholder would have otherwise received.

52.    The Respondent states correctly that the WPT would have affected the Project in its entirety and thus reduced the dividends of both Class A and B Shareholders in proportion of their holding in the Project, which is 50.1% for CPZ. In fact, such reduction of the ConocoPhillips affiliate's dividends is contained in the Tribunal's determination of the compensation due to this Party, which includes the amounts due under the WPT Law to the effect that the revenue of the Project and of its Shareholders are reduced accordingly. Therefore, the respective share of CPZ in respect of the WPT, and its resulting damage under the Discriminatory Action provisions, corresponds to its 50.1% participation in the Project.

53.    The rectification claimed results for each year concerned in the amounts of US$ 24,067,419 (2009), 22,552,210 (2012), 37,316,742 (2014) and 50,702,865 (2015), a total of US$ 134,639,236.

54.    The Claimants objected to the Respondent's submission that its allegation was unsupported. Depending on how one looks at the figures, the Claimants' observation is not wrong. The Respondent submits that it had shown that CPZ's ownership interest was correctly taken into account in the Award, referring to paragraphs 780-785. While Respondent is correct, it does not answer the Claimants' criticism, which is focused on the table in paragraph 785 only. Therefore, this requires an explanation from the Tribunal.

55.    The figures in column 4 of the table in paragraph 785 cannot be explained on the basis of the underlying components of the calculation, independently of the 50.1% proportion that should be included as a reduction. These components are the 25% percentage of the WPT listed for each year, where relevant, in column 2. When these figures are reduced to the 25% part, which is one quarter, and then further reduced on the basis of Article 14 WPT Law (for the three years where it applies, as noted in column 3), the resulting amounts demonstrate that they do not match with the numbers in column 4. This distortion explains why the Respondent was not able to make a demonstration focusing directly on the figures set up in column 4, and why the Claimants did not attempt to present a counter-calculation, merely suggesting that for the purpose of identifying whether a clerical or arithmetical error exists, the Tribunal may, if it so accepts to proceed, disclose the detailed workings underlying each of the figures under discussion.

56.    The Tribunal notes that the figures in column 4 were calculated on the basis of amounts of WPT different from those finally retained in the table of paragraph 785 of the Award. As the drafting of the Award was ongoing, the amounts representing the WPT were changed (column 2), but the subsequent calculation of the ensuing amounts of compensation relating to Petrozuata (column 4) were not adjusted accordingly. This is an arithmetical error.

57.    The Parties have not identified this error because they did not find an explanation for the figures retained in column 4, except as to the missing reduction based on CPZ's 50.1% share of dividends. In other words, the Parties were aware of an error affecting these amounts, but they could not know that the same figures were affected by a second calculation error.

58.    The Tribunal concludes therefore that the amounts listed in column 4 of the table under paragraph 785 should be rectified in two respects: (1) a new calculation must be made based on the amounts for WPT as listed in column 2 (25% less the reduction based on Article 14 WPT Law where applicable), and (2) reducing the resulting amount by the proportion of 50.1% corresponding to the CPZ's share of dividends under the Petrozuata Association Agreement. The elements of this calculation are as follows:

| | WPT US$[8] | Reduction based on Article 14 WPT | Compensation owed to CPZ (50.1%) | | |
|---|---|---|---|---|---|
| | | | Award (para. 785) | The Respondent's Request | Tribunal's adjusted calculation |
| 2007 ½ | -- | | -- | -- | |
| 2008 | 219,560,559 | | 0 | | |
| 2009 | | | 48,038,760 | 24,067,419 | 27,499,960 |
| 2010 | 6,878,000 | | 0 | | |
| 2011 | 965,816,000 | - 195,256,640 | 0 | | |
| 2012 | 1,165,640,000 | - 320,042,624 | 45,014,391 | 22,552,210 | 23,144,877 |
| 2013 | 836,220,000 | - 128,824,817 | 0 | | |
| 2014 | 390,960,000 | | 74,484,514 | 37,316,742 | 40,195,322 |
| 2015 | 0 | | 101,203,324 | 50,702,865 | 48,967,740 |
| 2016 | 0 | | 0 | | |
| 2017 | 0 | | 0 | | |
| 2018 | 0 | | 0 | | |
| 2019 | 0 | | 0 | | |
| 2020 | 0 | | 0 | | |
| 2021 | 5,430,000 | | 0 | | |
| 2022 | 14,118,000 | | 0 | | |
| 2023 | 22,806,000 | | 0 | | |
| 2024 | 23,142,000 | | 0 | | |
| 2025 | 24,531,000 | | 0 | | |
| 2026 | 25,650,000 | | 0 | | |
| Total | 3,700,751,559 | - 644,124,081 | 286,740,989[9] | 134,639,236 | 139,807,899 |
| 1 | 2 | 3 | 4a | 4b | 4c |

Table title: ConocoPhillips' Compensation (Petrozuata)

59.    The Tribunal accepts therefore that the table in paragraph 785 should be amended on the basis of the amounts listed above in column 4c, and that the total figure of US$ 139,807,899 is included in paragraphs 829 and 1010(3) of the Award.

D.    The Third Item

60.    The Respondent points to a third error in the Award's calculation in the same table in paragraph 785, last column, where the total compensation due to ConocoPhillips is determined as US$ 286,740,989. The Tribunal recognizes that an inversion of numbers occurred when this final figure was written down, and that it should read as US$ 2̲6̲8,740,989. This would also apply to the corresponding figure in paragraphs 829 and 1010(3) of the Award. In their letter dated 10 May 2019, the Claimants accept this rectification.

---

[8] The rectification operated in relation to the first item of the Respondent's request has the effect of modifying the amounts for the years 2010 and 2021 through 2026. These amounts, when corrected, do not trigger a right for compensation pursuant to the applicable compensation provision.

[9] This amount is addressed below as the third item to be corrected in order to read as US$ 2̲6̲8,740,989.

61.     However, the Tribunal observes that this error relates to the figures noted above. It has no bearing in relation to the rectification based on the second error identified by the Respondent. This latter rectification consists in replacing the amount of US$ 286,740,989 by the sum of US$ 139,807,899 (that the Respondent suggested to be US$ 134,639,236). The Respondent's calculations do not purport to cumulate the corrected figures if both items 2 and 3 were accepted[10]. The overall reduction it claims is US$ 152,101,754, an amount that reflects the reduction resulting from the correction requested in respect of the second item in relation to each yearly amount listed in the table in paragraph 785. The amount of US$ 286,740,989 is no longer pertinent once the rectification related to this second item is operated. Therefore, in light of the rectification accepted in respect of the second item, the Tribunal dismisses the rectification claimed under the third item.

## IV.     Legal Fees and Costs

62.     The three items raised by the Respondent in its Application for Rectification have been accepted by the Claimants in respect of the first and the third items. As to the second item, the Claimants did not object that it could be reconsidered by the Tribunal. In sum, there is no clear disagreement between the Parties that would allow allocating legal fees and costs based on the principle that the costs are to be borne by the unsuccessful party. Therefore, the Tribunal finds that the most reasonable and equitable solution is that each Party bears its own legal fees and costs.

63.     The Tribunal is also of the view that the sharing of the costs of this ICSID proceeding should not be driven by the success or loss of each Party. Therefore, the Tribunal decides that the costs related to the Tribunal members' fees and expenses, the ICSID Administrative fees and other direct expenses must be divided evenly between the Parties. The Tribunal recalls that the Claimants and the Respondent have each paid their respective share (US$ 150,000 each) of the advances requested by the ICSID Secretariat.

---

[10] The same position has been correctly recalled in the Respondent's letter submitted by Curtis on 13 May 2019 where the conclusion in respect of the second item is presented to the effect that "the Award should be reduced by US$ 134,101,754", and that this is "in addition to the reductions Claimants have already accepted in their letter of May 10, 2019". If the correction submitted as item 1 is taken alone, the reduction based on item 3 would be for US$ 18,000,000, resulting in a total reduction of US$ 152,101,754, when applied to the figure of US$ 286,740,989 mentioned in the Award. If this last amount is rectified to US$ 268,740,989, the resulting correction is for US$ 134,101,753.

**V.    Decision**

64.    Based on the reasons stated above, the Tribunal decides:

1.    That paragraph 1010(1) of the Award's Decision is rectified and reads as follows:

> 1.    That the Respondent, the Bolivarian Republic of Venezuela, shall pay as compensation for the expropriation enforced on 26 June 2007 in breach of Article 6 of the Agreement on Encouragement and Reciprocal Protection of Investments between the Kingdom of the Netherlands and the Republic of Venezuela dated 22 October 1991, the following amounts to the Claimants:
>
> a.    ConocoPhillips Petrozuata B.V. (CPZ) US$ 3,370,955,417;
> b.    ConocoPhillips Hamaca B.V. (CPH) US$ 4,443,122,885;
> c.    ConocoPhillips Gulf of Paria B.V. (CGP) US$ 552,059,091.

2.    That paragraph 1010(3) of the Award's Decision is rectified and reads as follows:

> 3.    The Bolivarian Republic of Venezuela shall pay to ConocoPhillips Petrozuata B.V. (CPZ) the amount of US$ 139,807,899 based on the compensation provisions of the Petrozuata Association Agreement, together with simple interest until the date of full and final payment at 12-month LIBOR or any other comparable rate in case LIBOR should be discontinued in the future.

3.    To dismiss any other application for rectification.

4.    That each of the Bolivarian Republic of Venezuela and the Claimants bear their respective share of the advance for costs paid to ICSID.

5.    That each Party bears its own legal fees and costs.

ICSID Case No. ARB/07/30

_____
Prof. Andreas Bucher
Arbitrator

Date:    14 August 2019

_____
The Hon. L. Yves Fortier, QC
Arbitrator

Date:    16 August 2019

_____
Mr. Eduardo Zuleta
President of the Tribunal

Date:    24 August 2019

22