**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONOCOPHILLIPS PETROZUATA B.V., et al., | |
| Petitioners, | Civil Action No. 1:19-cv-00683 (CJN) |
| v. | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Respondent. | |

<u>**PETITIONERS' MOTION FOR ENTRY OF DEFAULT JUDGMENT**</u>

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
601 Lexington Avenue, 31st Floor
New York, New York 10022
Tel:    212-277-4000
Fax:    212-277-4001

**D. Brian King** (*pro hac vice*)
New York University School of Law
40 Washington Square South, Room 508
New York, New York 10012
Tel:    212-992-8175

**KOBRE & KIM LLP**
1919 M Street, NW
Washington, DC 20036
Tel:    202-664-1900

*Attorneys for ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of Paria B.V.*

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ........................................................................................... 1

    I.     The Arbitration and the Award ..................................................... 1

    II.    The Annulment Proceedings ......................................................... 4

    III.   This Proceeding .............................................................................. 6

ARGUMENT ............................................................................................................. 7

    I.     This Court has Jurisdiction to Recognize and Enforce the Award ....................... 7

    II.    Venezuela was Served in Accordance with the FSIA and Failed to Respond ............................................................................................. 10

    III.   Petitioners have Established Their Claim for Relief ............................................. 12

    IV.   The Suspended Annulment Proceedings Should Not Prevent Entry of Default Judgment Against Venezuela .................................................. 15

CONCLUSION ........................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Beer v. Islamic Republic of Iran,*
    574 F. Supp. 2d 1 (D.D.C. 2008) .......................................................................................12

*Blue Ridge Invs., L.L.C. v. Republic of Argentina,*
    735 F.3d 72 (2d Cir. 2013) ............................................................................................8, 9

*Continental Casualty Co. v. Argentine Republic,*
    893 F. Supp. 2d 747 (E.D. Va. 2012) ...............................................................................8

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.,*
    244 F. Supp. 3d 100 (D.D.C. 2017) ..................................................................................8

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.,*
    No. 1:17-mc-00151 (D. Del. filed June 19, 2017) ...........................................................20

*Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru,*
    904 F. Supp. 2d 131 (D.D.C. 2012) ................................................................................14

*Gates v. Syrian Arab Republic,*
    580 F. Supp. 2d 53 (D.D.C. 2008) ..................................................................................12

*Gold Reserve Inc. v. Bolivarian Republic of Venez.,*
    146 F. Supp. 3d 112 (D.D.C. 2015) ................................................................................18

*GSS Group Ltd. v. Nat'l Port Authority,*
    680 F.3d 805 (D.C. Cir. 2012) ...........................................................................................9

*InfraRed Envtl. Infrastructure GP Ltd. v. Kingdom of Spain,*
    Civil Action No. 20-817, 2021 WL 2665406 (D.D.C. June 29, 2021) ..............................18

*Koch Minerals Sàrl v. Bolivarian Republic of Venez.,*
    No. 17-CV-2559-ZMF, 2021 WL 3662938 (D.D.C. Aug. 18, 2021) ...........................16, 20

*LLC SPC Stileks v. Moldova,*
    985 F.3d 871 (D.C. Cir. 2021) ...................................................................................17, 18

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain,*
    397 F. Supp. 3d 34 (D.D.C. 2019) ..................................................................................18

*M.B.L. Int'l Contractors, Inc. v. Republic of Trin. & Tobago,*
    725 F. Supp. 52 (D.D.C. 1989) ......................................................................................8, 9

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.,*
    863 F.3d 96 (2d Cir. 2017) ....................................................................................8, 14, 17

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain,*
Civil Action No. 19-01618, 2020 WL 5816238 (D.D.C. Sept. 30, 2020) .............................18

*Northrop Grumman Ship Systems, Inc. v. Ministry of Defense of the Republic of Venez.,*
No. 1:20-mc-00257 (D. Del. filed July 31, 2020) ...................................................................20

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venez.,*
No. 1:19-mc-00290 (D. Del. filed Nov. 04, 2019) .................................................................20

*Opati v. Republic of Sudan,*
140 S. Ct. 1601 (2020) ..........................................................................................................12

*Owens v. Republic of Sudan,*
864 F.3d 751 (D.C. Cir. 2017) .............................................................................................12

*Price v. Socialist People's Libyan Arab Jamahiriya,*
294 F.3d 82 (D.C. Cir. 2002) .................................................................................................9

*Rusoro Mining Ltd. v. Bolivarian Republic of Venez.,*
300 F. Supp. 3d 137 (D.D.C. 2018) .....................................................................................18

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.,*
Civil Action No. 20-129, 2021 WL 326079 (D.D.C. Feb. 1, 2021) ......................................17

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.,*
No. 1:21-mc-00340 (D. Del. filed Aug. 26, 2021) ...............................................................20

*Sealift Bulkers, Inc. v. Republic of Armenia,*
965 F. Supp. 81 (D.D.C. 1997) ............................................................................................11

*Tenaris S.A. v. Bolivarian Republic of Venez.,*
No. 1:18-cv-01371 (D.D.C. filed June 08, 2018) .................................................................20

*Tenaris S.A. v. Bolivarian Republic of Venez.,*
No. 18-CV-1371, 2020 WL 3265476 (D.D.C. June 17, 2020) ..............................................18

*Tenaris, S.A. v. Bolivarian Republic of Venez.,*
No. 1:18-cv-01373 (CJN) (D.D.C. filed June 8, 2018) .........................................................20

*Tenaris, S.A. v. Bolivarian Republic of Venez.,*
No. 1:18-cv-01373 (CJN), 2021 WL 1177996 (D.D.C. Mar. 29, 2021) ................................18

*Tidewater Inv. SRL v. Bolivarian Republic of Venez.,*
Civil Action No. 17-1457, 2018 WL 6605633 (D.D.C. Dec. 17, 2018).....................7, 13, 14

*Tidewater Investment SRL v. Bolivarian Republic of Venez.,*
No. 1:19-mc-00079 (D. Del. filed Apr. 03, 2019) ...............................................................20

*Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*,
Civil Action No. 18-2395, 2020 WL 2996085 (D.D.C. June 4, 2020)...................................18

*Valores Mundiales, S.L. v. Bolivarian Republic of Venez.*,
No. 1:19-cv-00046 (D.D.C. filed Jan. 08, 2019) ...................................................................20

*Vestey Grp. Ltd. v. Bolivarian Republic of Venez.*,
No. 1:18-cv-01456 (D.D.C. filed June 20, 2018) ..................................................................20

**Statutes**

9 U.S.C. § 1....................................................................................................................................13

9 U.S.C. § 207................................................................................................................................17

*22 U.S.C. § 1650a...............................................................................................................*passim*

28 U.S.C. § 1330........................................................................................................................7, 9

*28 U.S.C. § 1605...................................................................................................................7, 8, 9

*28 U.S.C. § 1608............................................................................................................ *passim*

28 U.S.C. § 1610...........................................................................................................................19

Fed. R. Civ. P. 55......................................................................................................................1, 11

**Other Authorities**

Christoph H. Schreuer, *The ICSID Convention: A Commentary*
(2nd ed., CUP: 2009) ......................................................................................................16, 17

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ...................................................................17

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters,
Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 63 ....................................................................10

*Convention on the Settlement of Investment Disputes between
States and Nationals of Other States,
Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159........................................................ *passim*

Administrative and Financial Regulations of the Convention on the Settlement of
Investment Disputes between States and Nationals of Other States ........................................5

Report of the Executive Directors of the International Bank for
Reconstruction and Development on the Convention on the Settlement of
Investment Disputes between States and Nationals of Other States........................................15

Petitioners ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of Paria B.V. (collectively, "Petitioners") move, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1608(e), for a default judgment against Respondent the Bolivarian Republic of Venezuela ("Venezuela").

Petitioners commenced this action on March 11, 2019. On January 10, 2020, Petitioners were ultimately able to serve Venezuela via diplomatic channels under Section 1608(a)(4) of the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1608(a)(4). Venezuela had until March 10, 2020 to serve its answer or other responsive pleading. *See* 28 U.S.C. § 1608(d). Venezuela failed to do so. To date, Venezuela has made no appearance in this case, has not filed any pleadings or served any pleadings upon Petitioners or their counsel, and has not received any extension of time to file any pleadings. The Clerk entered a default against Venezuela on October 1, 2021. *See* Clerk's Entry of Default as to Bolivarian Republic of Venezuela, ECF No. 33. Petitioners now respectfully request that the Court enter a default judgment against Venezuela. *See* Fed. R. Civ. P. 55(b); 28 U.S.C. § 1608(e).

## FACTUAL BACKGROUND

This is an action to recognize and enforce the pecuniary obligations of an arbitral award pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention"). The arbitral award sought to be recognized and enforced (the "Award") was rendered on March 8, 2019, in favor of Petitioners and against Venezuela.

### I.        The Arbitration and the Award

Petitioners are private companies incorporated under the laws of the Kingdom of the Netherlands ("the Netherlands") that held interests in three oil projects located the Orinoco Oil

Belt region of Venezuela.  Friedman Decl., Mar. 11, 2019 ("First Friedman Decl."), Ex. D (Decision on Jurisdiction and the Merits), ¶¶ 2, 7, ECF No. 1-6.  The underlying dispute arose out of Venezuela's unlawful and uncompensated expropriation of Petitioners' business interests in Venezuela.  *See id.* at ¶¶ 2, 6, 208, 404.

On November 2, 2007, Petitioners filed a Request for Arbitration against Venezuela with the International Centre for Settlement of Investment Disputes ("ICSID"), alleging that Venezuela's actions constituted violations of the bilateral investment treaty ("BIT") between the Netherlands and Venezuela, and of Venezuelan law.  *Id.* at ¶¶ 10–11.  An ICSID arbitral tribunal (the "Tribunal") was constituted on July 23, 2008.  *Id.* at ¶ 24.  The Tribunal was comprised of eminent jurists with expertise in international arbitration.  *See id.* at ¶¶ 13–14, 18, 23.

On September 3, 2013, the Tribunal issued its Decision on Jurisdiction and the Merits, finding that it had jurisdiction over the dispute and that Venezuela had unlawfully expropriated Petitioners' investments in violation of the BIT.  *Id.* at ¶ 404.  Venezuela moved for reconsideration of certain aspects of the Decision on Jurisdiction and the Merits, and on January 17, 2017, the Tribunal issued an Interim Decision reaffirming its prior findings.  First Friedman Decl., Ex. E (Interim Decision), ¶ 156(3), ECF No. 1-7.  On March 8, 2019, the Tribunal rendered its final Award, which dealt with the compensation owed to Petitioners for the unlawful expropriation of their investments.  First Friedman Decl., Ex. A (Award), ECF No. 1-3.  The Award incorporates by reference the Tribunal's two prior decisions.  *See id.* at ¶¶ 38, 43, 1009.

The Tribunal awarded Petitioners monetary damages (including pre-award interest) in the amount of US$8,733,046,155, together with post-award interest until payment is made in full, to begin accruing 60 days after the issuance of the Award.  *See id.* at ¶¶ 1010(1)–(3), 1010(9).  The Tribunal also ordered Venezuela to reimburse Petitioners for a portion of their legal fees and

ICSID arbitration costs, in an additional amount of US$21,861,000.[1]  *See id.* at ¶¶ 1010(6)–(7).

The total amount owed to Petitioners under the Award as of the date of the Award was

US$8,754,907,155.

On April 16, 2019, Venezuela filed an Application for Rectification of certain

arithmetical errors alleged to be contained in the March 8, 2019 Award.  On August 29, 2019,

the Tribunal rendered its Decision on Rectification.  Status Report, Sept. 26, 2019, Ex. A

(Decision on Rectification), ECF No. 14-1.  The effect of the Tribunal's Decision on

Rectification was to reduce the total amount of damages owed to Petitioners under the Award

from US$8,754,907,155 to US$8,527,806,292.  *Id.* at ¶¶ 64(1)–(2).  Under Article 49(2) of the

ICSID Convention, the Decision on Rectification is part of the Award.  First Friedman Decl., Ex.

B, (ICSID Convention Excerpts), Art. 49(2), ECF No. 1-4.

The Award provides for post-award (pre-judgment) interest to begin accruing on the

amounts owed under the Award (as rectified) from May 7, 2019 "until the date of full and final

payment" as follows:  interest on the sum of US$8,366,137,393 at an annual rate of 5.5%,

compounded annually; simple interest on the sum of US$139,807,899 at 12-month LIBOR; and

simple interest on the sum of US$21,744,405.72 at an annual rate of 3%.  First Friedman Decl.,

Ex. A (Award), ¶¶ 1010(1)–(3), (6)–(7), (9), ECF No. 1-3; Status Report, Ex. A (Decision on

Rectification), ¶ 64(1)–(2), ECF No. 14-1.  As of the date of this motion, Venezuela owes

Petitioners US$9,710,881,097 under the Award, inclusive of post-Award interest.  Russell Decl.,

---

[1]  The Award requires Venezuela to pay Petitioners for ICSID arbitration costs that
Petitioners were required to pay to ICSID in substitution of Venezuela.  First Friedman
Decl., Ex. A (Award), ¶ 1010(7), ECF No. 1-3.  The Award states that the amount of
ICSID arbitration costs owed to Petitioners by Venezuela would be "reduced by the
balance refunded by ICSID to [Petitioners]."  *Id.*  On May 28, 2021, ICSID refunded
Petitioners US$116,594.28.  Russell Decl., Oct. 20, 2021 ("Russell Decl."), Ex. A (Email
from ICSID Finance Team).  As a result, the amount of legal fees and ICSID arbitration
costs owed to Petitioners under the Award is US$21,744,406.  *See* Russell Decl. ¶¶ 7, 12.

¶ 12.  Petitioners respectfully request leave to update this amount, to include all accrued interest, prior to this Court's entry of judgment.

## II.    The Annulment Proceedings

On December 16, 2019, Petitioners received a communication from the Secretary-General of ICSID informing Petitioners that ICSID had registered an application by Venezuela to annul the Award (the "Application").  Friedman Decl., Sept. 30, 2021 ("Second Friedman Decl."), ¶ 9, ECF No. 32-1.  Venezuela's Application included a request that enforcement of the Award be stayed pending a decision on its Application.  *Id.*  Under Article 52(5) of the ICSID Convention, enforcement of the Award was automatically provisionally stayed until an *ad hoc* annulment committee appointed by ICSID to rule on Venezuela's Application decided whether the stay should be continued.  First Friedman Decl., Ex. B, (ICSID Convention Excerpts), Art. 52(5), ECF No. 1-4.

The *ad hoc* Committee was constituted on February 3, 2020 and comprises eminent jurists with expertise in international arbitration.  Russell Decl., ¶ 6.  The parties thereafter filed multiple rounds of submissions on Venezuela's request to continue the stay of enforcement of the Award.  Second Friedman Decl., ¶ 9.  Among Venezuela's submissions was an acknowledgement of the proceeding before this Court.[2]  *Id.*  A hearing on Venezuela's request was held on September 30, 2020.  On November 2, 2020, the *ad hoc* Committee decided to lift the stay of enforcement if Petitioners met certain conditions and provided certain assurances to the *ad hoc* Committee.  *See* Status Report, Dec. 7, 2020, Ex. A (Decision on the Applicant's Request to Continue the Stay of Enforcement of the Award), ¶ 67, ECF No. 29-1; Status Report,

---

[2]    Venezuela also publicly acknowledged the proceeding before this Court following the entry of default.  *See* Russell Decl., ¶ 8; Russell Decl., Ex. B (Venezuela National Communication Center Press Release).

May 12, 2021, ECF No. 31.  Among the requirements set by the *ad hoc* Committee for lifting the automatic stay of enforcement was that Petitioners provide a guarantee to return to Venezuela any sums paid under the Award in the event the Award is annulled, and that Petitioners keep any funds collected on the Award in segregated accounts.  Status Report, Dec. 7, 2020, Ex. A (Decision on the Applicant's Request to Continue the Stay of Enforcement of the Award), ¶ 67(3), ECF No. 29-1.

On September 29, 2021, the *ad hoc* Committee confirmed that Petitioners had satisfied all conditions necessary for lifting the automatic stay of enforcement and therefore confirmed that the stay had been discontinued.  *See* Second Friedman Decl., Ex. A (Committee's Decision Confirming Discontinuance of Stay of Enforcement), ECF No. 32-2.[3]

Accordingly, as of the date of this motion, there is no stay of enforcement in effect with respect to the Award.  Second Friedman Decl. ¶ 10.

The annulment proceeding has now been suspended as a result of Venezuela's non-payment of advances to cover the costs of the proceeding.  Under ICSID Administrative and Financial Regulation 14(3)(e), the party that applies to annul an ICSID arbitration award must pay advances to cover the costs of the proceeding.  Russell Decl., Ex. C (ICSID Administrative and Financial Regulations).  Failure to pay those advances results in suspension of the annulment proceedings.  *Id.* at Admin. & Fin. Reg. 14(3)(d)–(e).  ICSID declared Venezuela to be in default of its payment obligations on September 7, 2021, and on October 14, 2021 confirmed that the annulment proceedings had been suspended pursuant to ICSID Administrative and Financial Regulations 14(3)(d) and (e).  Russell Decl., ¶ 9.

---

[3]    On October 4, 2021, Venezuela asked the *ad hoc* Committee to reconsider its decision lifting the stay.  As a result of the suspension of the proceeding (described below), the *ad hoc* Committee did not rule on Venezuela's most recent reconsideration request.  Russell Decl., ¶ 6, n.1.

The Award is final and binding on Venezuela.  First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 53, ECF No. 1-4.  The *ad hoc* Committee has authorized the Claimants to enforce the Award.  Venezuela has not paid any part of the Award.  Russell Decl. ¶ 12.

### III.    This Proceeding

On March 11, 2019, Petitioners filed this action for recognition of the Award pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention.  *See* Petition to Recognize and Enforce an ICSID Arbitration Award ("Petition"), ECF No. 1.  The summons was issued by the Clerk on March 12, 2019.  Service of the summons, Petition, and a notice of suit was accomplished under 28 U.S.C. § 1608(a)(4) on January 10, 2020.  *See* 28 U.S.C. § 1608(c)(1); Return of Service, ECF No. 20.  The FSIA requires an answer or other responsive pleading to be served within 60 days of service having been made.  *See* 28 U.S.C. § 1608(d).  Venezuela was therefore required to file an answer or other responsive pleading by March 10, 2020.  Venezuela did not do so; to date, Venezuela has made no appearance in this case nor filed any pleadings or served any pleadings upon Petitioners or their counsel.[4]

Therefore, on September 30, 2021, the day after the *ad hoc* Committee confirmed that the stay had been discontinued, Petitioners requested that the Clerk of the Court issue an entry of default.  *See* Request for Clerk to Enter Default, ECF No. 32.  The Clerk of the Court entered the default on October 1, 2021.  *See* Clerk's Entry of Default as to Bolivarian Republic of Venezuela, ECF No. 33.  Petitioners now respectfully seek entry of a default judgment against Venezuela.

---

[4]    Nevertheless, among Venezuela's submissions in the annulment proceeding was an acknowledgement of the proceedings before this Court.  *See* Second Friedman Decl. ¶ 9; *see also* footnote 2, above.

**ARGUMENT**

## I.     This Court has Jurisdiction to Recognize and Enforce the Award

This Court has jurisdiction under 22 U.S.C. § 1650a, 28 U.S.C. § 1330(a) and §§ 1605(a)(1), (6).

The FSIA provides that "district courts . . . have original jurisdiction [in] any nonjury civil action against a foreign state [when] the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a).  Venezuela is not entitled to immunity from Petitioners' claim for two independent reasons.

*First*, Venezuela may not assert sovereign immunity because the "arbitral award" exception in the FSIA applies to this action.  That exception provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— . . .
>
> (6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitration, if . . . (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards . . . .

28 U.S.C. § 1605(a)(6).

This exception to immunity applies here, because the Award is governed by the ICSID Convention, a treaty in force for the United States "call[ing] for the recognition and enforcement of [ICSID] awards." *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, Civil Action No. 17-1457, 2018 WL 6605633, at *4 (D.D.C. Dec. 17, 2018) ("The Court has little trouble concluding, pursuant to the arbitral award exception, that Venezuela is not entitled to immunity in this

7

action."); *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 244 F. Supp. 3d 100, 109 (D.D.C. 2017) (finding jurisdiction under 28 U.S.C. § 1605(a)(6) to enforce an arbitration award against Venezuela); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 104–05 (2d Cir. 2017) (same); *Continental Casualty Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) (same). In holding that the FSIA's "arbitral award exception" applies to the recognition and enforcement of ICSID awards, the Second Circuit noted that "every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA has concluded that they do." *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013) (collecting cases).

*Second*, and independently, Venezuela has waived sovereign immunity pursuant to the "implied waiver" provision of the FSIA, which states:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver; . . . .

28 U.S.C. § 1605(a)(1).

Venezuela implicitly waived its sovereign immunity with respect to actions to recognize and enforce ICSID awards by becoming a Contracting State to the ICSID Convention.  Article 54 of the ICSID Convention contains the implied waiver, as it obliges each Contracting State to "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 54(1), ECF No. 1-4.

In *M.B.L. Int'l Contractors, Inc. v. Republic of Trin. & Tobago*, this Court recognized that Contracting States to the ICSID Convention have waived their sovereign immunity by

implication with respect to recognition and enforcement actions.   725 F. Supp. 52, 55–56 (D.D.C. 1989).  In that case, the Court observed that a contrary holding would "defeat the very purpose of the [ICSID] Convention which is to provide for the enforcement of foreign arbitration awards," and that Contracting States to the ICSID Convention "must have contemplated the participation of the United States courts for enforcement of arbitration awards under the [ICSID] Convention notwithstanding" sovereign immunity.  *Id.*; *see also Blue Ridge Invs., L.L.C.*, 735 F.3d at 84.  Thus, in becoming a Contracting State to the ICSID Convention, Venezuela must have contemplated enforcement actions in other Contracting States, including in the United States, and has therefore waived its sovereign immunity with respect to the recognition of ICSID awards pursuant to 28 U.S.C. § 1605(a)(1).

Thus, Venezuela is not entitled to invoke its sovereign immunity in this action and this Court has subject matter jurisdiction under 28 U.S.C. § 1330(a) to recognize and enforce the Award.

This Court also has personal jurisdiction over Venezuela.  Under the FSIA, personal jurisdiction over a foreign State is established as a result of the Court having subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) and the foreign State having been properly served with process pursuant to 28 U.S.C. § 1608.  *See* 28 U.S.C. § 1330(b); *GSS Group Ltd. v. Nat'l Port Authority*, 680 F.3d 805, 811 (D.C. Cir. 2012).[5]  This Court has subject matter jurisdiction for the reasons given above, and Venezuela has been properly served pursuant to 28 U.S.C § 1608(a)(4) for the reasons given below.  This Court therefore has personal jurisdiction over Venezuela.

---

[5]     Unlike private persons, foreign States do not benefit from the constitutional limits on personal jurisdiction.  *See GSS Group Ltd.*, 680 F.3d at 813 (citing *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 98–99 (D.C. Cir. 2002)).

## II.      Venezuela was Served in Accordance with the FSIA and Failed to Respond

Venezuela has been properly served in accordance with the FSIA's rules for service on a foreign sovereign.  *See* 28 U.S.C. § 1608(a).

The FSIA specifies four alternative methods of service on a foreign sovereign, in descending order of preference.  The first method of service under the FSIA is delivery "in accordance with any special arrangement for service between the plaintiff and the foreign state . . . ."  28 U.S.C. § 1608(a)(1).  Section 1608(a)(1) does not apply here because no "special arrangement for service" exists between Petitioners and Venezuela.  Second Friedman Decl. ¶ 4.

The second alternative means of service under the FSIA is "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). The applicable international convention to which the United States and Venezuela are parties is the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 63 ("Hague Service Convention").  Venezuela received all documents necessary for completing service under the Hague Service Convention on April 29, 2019.  Affidavit Requesting Foreign Mailing 2, ECF No. 15.  However, Venezuela's Central Authority has to date failed to provide a certificate reflecting service on Venezuela.  *See* 28 U.S.C. § 1608(c)(2).  Petitioners therefore concluded that service could not be successfully effected under 28 U.S.C. § 1608(a)(2).  *See* Affidavit Requesting Foreign Mailing 2, ECF No. 15.

Petitioners were not able to serve Venezuela through 28 U.S.C. § 1608(a)(3), the third method of service under the FSIA, because Venezuela has formally objected to service by mail under the Hague Service Convention.  *See* Second Friedman Decl. ¶ 6.

Therefore, on September 26, 2019, Petitioners requested the assistance of the Clerk of the Court in effecting service on Venezuela through diplomatic channels under 28 U.S.C.

§ 1608(a)(4), the fourth method of service under the FSIA.  *See* Affidavit Requesting Foreign Mailing 1, ECF No. 15.  All documents necessary for diplomatic service, including the summons, Petition, and notice of suit, were mailed to the U.S. Department of State by the Clerk of the Court on October 3, 2019.  *See* Certificate of Mailing, ECF No. 17.  On January 13, 2020, a representative of the Secretary of State sent the Clerk of the Court a certified copy of the diplomatic note indicating that the papers were transmitted to the Venezuelan Embassy in Washington, D.C. on January 10, 2020.  *See* Return of Service, ECF No. 20.  Service on Venezuela was therefore accomplished under 28 U.S.C. § 1608(a)(4) on January 10, 2020.  *See* 28 U.S.C. § 1608(c)(1).

Venezuela had 60 days to file an answer or other responsive pleading.  *See* 28 U.S.C. § 1608(d).  Venezuela was therefore required to file an answer or other responsive pleading by March 10, 2020.  Venezuela did not do so.  To date, Venezuela has made no appearance in this case, has not filed any pleadings or served any pleadings upon Petitioners or their counsel, and has not received any extension of time to file any pleadings.  Venezuela is neither an infant nor an incompetent person.  As soon as the *ad hoc* Committee lifted its stay on enforcement, *see supra* page 5, Petitioners requested the Clerk to issue an entry of default.  *See* Request for Clerk to Enter Default, ECF No. 32; Fed. R. Civ. P. 55(a).  The Clerk did so on October 1, 2021.  *See* Clerk's Entry of Default as to Bolivarian Republic of Venezuela, ECF No. 33.  Accordingly, a default judgment should now be entered against Venezuela.  *See, e.g.*, *Sealift Bulkers, Inc. v. Republic of Armenia*, 965 F. Supp. 81, 84 (D.D.C. 1997) ("Under the Foreign Sovereign Immunities Act, if a claimant has properly served a foreign sovereign defendant and the foreign sovereign has failed to respond within sixty days of service, the Court may enter default judgment . . . .").

### III.   Petitioners have Established Their Claim for Relief

Under 28 U.S.C. § 1608(e), "[n]o judgment by default shall be entered . . . against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  The plaintiff "must present a legally sufficient prima facie case, *i.e.*, a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff."  *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008) (internal quotations omitted).  Section 1608(e) "does not require the court to demand more or different evidence than it would ordinarily receive" in order to render a default judgment, and "indeed, the quantum and quality of evidence that might satisfy a court can be less than that normally required."  *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (internal quotations omitted), vacated on other grounds and remanded sub nom. *Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020); *Beer v. Islamic Republic of Iran*, 574 F. Supp. 2d 1, 9 (D.D.C. 2008) ("This Court accepts the uncontested evidence and sworn testimony submitted by plaintiffs as true in light of defendants' failure to object or enter an appearance to contest the matters in this case.").

The ICSID Convention provides a framework for the resolution of investment disputes between a State that is a member of the Convention and a national of another State that is also a member of the Convention.  At all times relevant to this action, Venezuela and the Netherlands, which is Petitioners' place of incorporation, were parties to the ICSID Convention (as is the United States).[6]

---

[6]      While the arbitration was pending, Venezuela withdrew from the ICSID Convention, effective on July 25, 2012.  However, all of the rights of Petitioners and obligations of Venezuela that were at issue in the underlying arbitration, and which Petitioners seek to have enforced in this action, arose before Venezuela's denunciation took effect and were therefore unaffected by it.  *See* First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 72, ECF No. 1-4 ("Notice [of denunciation] by a Contracting State . . . shall not affect the rights or obligations under this Convention . . . arising out of consent

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, does not apply to awards rendered pursuant to the ICSID Convention.  *See* 22 U.S.C. § 1650a(a).  Article 54(1) of the ICSID Convention requires member States to "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 54(1), ECF No. 1-4.  To fulfill this obligation, the United States passed implementing legislation that provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States.  The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.  The Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) shall not apply to enforcement of awards rendered pursuant to the [ICSID] convention.

22 U.S.C. § 1650a(a).[7]

Under 22 U.S.C. § 1650a,

> An award of an arbitral tribunal rendered pursuant to [the ICSID Convention] shall create a right arising under a treaty of the United States.  The pecuniary obligations imposed by such an award *shall* be enforced and *shall* be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.

---

to the jurisdiction of [ICSID] given by one of them before such notice was received by the depositary."); *see also Tidewater Inv. SRL*, 2018 WL 6605633, at *4, n.3.

[7]    The ICSID Convention provides for an exclusive internal review mechanism, termed an application for "annulment."  *See* First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 53(1), ECF No. 1-4.  Arbitral awards under the ICSID Convention are "not . . . subject to any appeal or to any other remedy except those provided for in [the ICSID] Convention."  *Id.*  The ICSID Convention allows for annulment only on very narrow grounds, all of which are listed in the Convention itself.  *See id.* at Art. 52(1).  As noted above, *see supra* page 5, Venezuela's application for annulment is now suspended as a result of Venezuela's payment default.

(Emphasis added).   As the mandatory language "shall" reflects, in enacting Section 1650a, Congress "expect[ed] that actions to enforce ICSID awards would not be protracted." *Mobil Cerro Negro, Ltd.*, 863 F.3d at 121; *see also Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 133 (D.D.C. 2012) ("The legal standards governing judicial review of arbitration awards are not complicated" and "such review is limited by design.") (internal quotations omitted).   Moreover, the "language of § 1650a appears to envision no role for this Court beyond ensuring its own jurisdiction over this action and the validity of [petitioner's] entitlement to any unpaid claims under the Award." *Tidewater Inv. SRL*, 2018 WL 6605633, at *6 (citing *Duke Energy Int'l Peru Invs. No. 1 Ltd.*, 904 F. Supp. 2d at 132–33 (noting that the court is "*required by statute* to give [an ICSID award] full faith and credit and confirm it accordingly") (emphasis added)).

Petitioners have submitted to the Court true and correct copies of the Award, the *ad hoc* Committee's decision to lift the provisional stay on enforcement of the Award, and the *ad hoc* Committee's confirmation that the provisional stay of enforcement has been discontinued.   *See* First Friedman Decl. ¶ 3 & Ex. A (Award); Status Report, Dec. 7, 2020, Ex. A (Decision on the Applicant's Request to Continue the Stay of Enforcement of the Award), ECF No. 29-1; Second Friedman Decl. ¶ 4 & Ex. A (Committee's Decision Confirming Discontinuance of Stay of Enforcement).   Accordingly, Petitioners have established their entitlement to relief under 22 U.S.C. § 1650a, and it is respectfully submitted that the Court should enforce the pecuniary obligations of the Award and give the Award the same full faith and credit as a final judgment. *See Tidewater Inv. SRL*, 2018 WL 6605633, at *7 (copies of ICSID award and related annulment decision, representation by petitioner's counsel that Venezuela had not paid any amount owed under the award, and certainty as to the amount owed under the award were together "sufficient

for [petitioner] to show that it is entitled to the claimed amounts as the creditor of a final ICSID award under § 1650a").

### IV.  The Suspended Annulment Proceedings Should Not Prevent Entry of Default Judgment Against Venezuela

The fact that the annulment proceedings have not yet concluded should not prevent this Court from entering a default judgment against Venezuela, because the ICSID Convention and United States law require this Court to recognize and enforce the Award and because the *ad hoc* Committee has decided to lift the automatic stay of enforcement.  That conclusion applies with particular force following the suspension of the annulment proceedings as a result of Venezuela's failure to pay the required advances.

As a party to the ICSID Convention, Venezuela agreed that it would pay awards rendered against it unless a stay *issued under the terms of the ICSID Convention* was in effect.  *See* First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 53(1) ("Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed *pursuant to the relevant provisions of this Convention*.") (emphasis added), ECF No. 1-4.  The United States also agreed to enforce those awards.  *See* First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 54(1) ("Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."), ECF No. 1-4; Russell Decl., Ex. E (Report of the Executive Directors on the ICSID Convention), ¶ 42 ("Subject to any stay of enforcement [issued] in accordance with the provisions of the Convention, the parties are obliged to abide by and comply with the award and Article 54 requires every Contracting State to recognize the award as binding and to enforce the pecuniary obligations imposed by the award as if it were a final decision of a domestic court.").

Under the ICSID Convention, Venezuela's obligation to pay, and the United States' obligation to recognize and enforce, an ICSID Convention award are only curtailed if a stay of enforcement is in place under the terms of the Convention.  *See* First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 53(1); Russell Decl., Ex. D (Christoph H. Schreuer, *The ICSID Convention:  A Commentary* (2nd ed., CUP: 2009)), Article 54, ¶ 40 ("The Convention, as eventually adopted, leaves no discretion to domestic courts . . . in the context of Art. 54 to make allowance for possible or actually pending proceedings for . . . annulment of awards.  The only decisive criterion is whether there has, in fact, been a stay of enforcement in accordance with Arts. 50, 51 or 52 [of the ICSID Convention].  A party may find that if [the] *ad hoc* committee has refused a stay of enforcement, the procedures for recognition and enforcement will go ahead despite the fact that proceedings for . . . annulment are pending.").  Given that there is no stay of enforcement in place under the terms of the ICSID Convention, Venezuela must be held to its promise to pay the Award rendered against it, and this Court should recognize and enforce the Award as required by the ICSID Convention.

The mere existence of pending ICSID annulment proceedings "poses no impediment to entering a judgment enforcing [an ICSID Convention] award" when "the ICSID panel [has] lifted the stay of enforcement."  *Koch Minerals Sàrl v. Bolivarian Republic of Venez.*, No. 17-CV-2559-ZMF, 2021 WL 3662938, at *1, 3 (D.D.C. Aug. 18, 2021) (granting motion for summary judgment on a petition to recognize and enforce an ICSID Convention award against Venezuela despite ICSID annulment proceedings not having concluded); *see also* Russell Decl., Ex. D (Christoph H. Schreuer, *The ICSID Convention:  A Commentary* (2nd ed., CUP: 2009)), Article 52, ¶ 581 ("[A]nnulment proceedings that are not accompanied by a stay of enforcement . . . are neither a justification for non-compliance with the award nor a basis for domestic courts

to withhold recognition or refuse enforcement. . . .  If . . . the *ad hoc* committee . . . declines to

continue or to grant a stay, the award is fully binding and enforceable.  The fact alone that

annulment proceedings are pending has no suspensive effect.").

United States law also requires the enforcement of ICSID Convention awards.  *See* 22

U.S.C. § 1650a(a) ("An award of an arbitral tribunal rendered pursuant to chapter IV of the

[ICSID] convention shall create a right arising under a treaty of the United States.  The pecuniary

obligations imposed by such an award *shall* be enforced and *shall* be given the same full faith

and credit as if the award were a final judgment of a court of general jurisdiction of one of the

several States.") (emphasis added).[8]  Indeed, the ability of U.S. courts to defer recognition and

---

[8]    Both the ICSID Convention and the federal enabling statute, which require the recognition and enforcement of ICSID awards, stand in contrast to the treatment of international arbitration awards arising under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention").  Under Article VI of the New York Convention, courts are affirmatively granted discretion regarding whether to enforce a New York Convention award while foreign set-aside proceedings are pending.  New York Convention, Art. VI ("If an application for the setting aside or suspension of the award has been made to a competent authority . . . the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award . . . .").  The ICSID Convention and federal law include no such grant of discretion, but rather *require* ICSID Convention awards to be enforced.  *See* First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 54(1), ECF No. 1-4; 22 U.S.C. § 1650a(a); *see also Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, Civil Action No. 20-129, 2021 WL 326079, at *4 (D.D.C. Feb. 1, 2021) ("Summary judgment to confirm and enforce an ICSID arbitration award should be granted where the party seeking recognition or enforcement provides a copy of the award to the relevant court . . . and where there are no defenses to enforcement . . . because courts have an 'exceptionally limited' role in enforcing ICSID arbitral awards . . . ."); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 102 (2d Cir. 2017) ("[U]nder the Convention's terms, [United States courts] may do no more than examine the [award's] authenticity and enforce the obligations imposed by the award.").  Even if the Court's discretion with respect to ICSID award recognition proceedings were as broad as the discretion granted to courts in the New York Convention context, there would still be no justification for a stay here.  *See LLC SPC Stileks v. Moldova*, 985 F.3d 871, 880 (D.C. Cir. 2021) (district court did not abuse discretion in deciding not to stay confirmation proceedings under 9 U.S.C. § 207 pending

enforcement of ICSID arbitration awards was recently called into question in *Tenaris S.A. v. Bolivarian Republic of Venezuela*, which found that "the Court may lack authority to stay the enforcement of [ICSID] arbitration award[s] . . . because doing so may violate the ICSID's implementing statute, 22 U.S.C. § 1650(a)."  Civil Action No. 1:18-cv-01373 (CJN), 2021 WL 1177996, at *4 (D.D.C. Mar. 29, 2021) (citing *Tenaris S.A. v. Bolivarian Republic of Venez.*, No. 18-CV-1371, 2020 WL 3265476, at *4 (D.D.C. June 17, 2020)).[9]  Delaying enforcement of the

_____

conclusion of foreign set-aside proceedings where request for arbitration had been filed over ten years prior); *Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, 300 F. Supp. 3d 137, 149–50 (D.D.C. 2018) (denying motion to stay enforcement pending set-aside proceedings before Paris Court of Appeal, granting petition to confirm award, and noting that "[m]ore than five years have passed since Rusoro initiated arbitration proceedings; Rusoro prevailed before the Tribunal; and Rusoro has yet to receive payment from Venezuela" (citation omitted)); *Gold Reserve Inc. v. Bolivarian Republic of Venez.*, 146 F. Supp. 3d 112, 135 (D.D.C. 2015) (denying request for a stay pending set-aside proceedings and confirming award, noting that "the general objectives of arbitration, weigh[] strongly in favor of confirmation [and] Gold Reserve first filed its request for arbitration . . . over six years ago . . . .").

[9]     Some courts in this District have decided not to enter judgment while annulment proceedings are pending and no ICSID-imposed stay is in place.  Those cases, however, do not stand for the proposition that this Court cannot proceed with recognition and enforcement of the Award while annulment proceedings are pending or suspended, and in any event turned on their particular facts, which are distinguishable from those present here.  *See InfraRed Envtl. Infrastructure GP Ltd. v. Kingdom of Spain*, Civil Action No. 20-817, 2021 WL 2665406, at *1 (D.D.C. June 29, 2021) (deciding to stay proceedings because "[t]hickly tangled legal issues beset resolution of this matter—including an apparent conflict between recent EU law and multiple treaty regimes, which no U.S. court has yet resolved"); *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, Civil Action No. 19-01618, 2020 WL 5816238, at *3 (D.D.C. Sept. 30, 2020) (same); *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, at 36–37 (D.D.C. 2019) (same, and noting additionally that ICSID-imposed stay remained in place); *see also Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*, Civil Action No. 18-2395, 2020 WL 2996085, at *2, 5 (D.D.C. June 4, 2020) (lifting of ICSID-imposed stay was not conditional on petitioner guaranteeing to repay any sums collected in the event of annulment).  Moreover, in none of those cases had the sovereign-debtor affirmatively decided to default rather than enter an appearance, and in none of those cases was an annulment proceeding suspended due to the sovereign-debtor's failure to pay the advances of costs required of it under the ICSID Administrative and Financial Regulations.  *See* Russell Decl., ¶¶ 8–9.

Award here would thus be contrary to the United States' commitments not only under the ICSID Convention but also under federal law.

In addition, no prejudice could result to Venezuela from the entry of default judgment while the annulment proceeding is pending (or suspended).[10]  The conditions set by the *ad hoc* Committee for lifting the stay of enforcement included requiring Petitioners to:  (*i*) provide a corporate guarantee to return to Venezuela any sums recovered in satisfaction of the Award in the event the Award is annulled; (*ii*) set up segregated bank accounts in which to hold any sums recovered in satisfaction of the Award, to facilitate the return of such funds should that be necessary at the conclusion of the annulment proceedings; and (*iii*) obtain an authorization from the U.S. Treasury's Office of Foreign Assets Control authorizing Petitioners to return any sums owed to Venezuela as a result of annulment.  Status Report, Dec. 7, 2020, Ex. A (Decision on the Applicant's Request to Continue the Stay of Enforcement of the Award), ¶ 67, ECF No. 29-1. The *ad hoc* Committee confirmed that the automatic stay of enforcement had been lifted only after it was satisfied that all of these conditions had been satisfied and that appropriate safeguards were therefore in place.  *See* Second Friedman Decl., ¶ 10.

Similarly, even after judgment is entered against Venezuela, Petitioners will not be able to seek attachment or execution until this Court "determine[s] that a reasonable period of time has elapsed following the entry of judgment."  28 U.S.C. § 1610(c).  No prejudice could possibly result to Venezuela in these circumstances.

---

[10]  The balance of harms to the parties from lifting or maintaining the ICSID stay on enforcement of the Award was the central factor in the *ad hoc* Committee's decision to lift the stay of enforcement.  *See* Status Report, Dec. 7, 2020, Ex. A (Decision on the Applicant's Request to Continue the Stay of Enforcement of the Award), ¶¶ 37, 67, ECF No. 29-1.

On the other hand, postponing recognition and enforcement of the Award would significantly prejudice Petitioners.  Every delay to entry of judgment increases Petitioners' collection risk.  More and more of Venezuela's creditors are converting their international arbitration awards into judgments and/or seeking execution against Venezuela's limited U.S. assets.[11]  Imposing a stay that prevents Petitioners from seeking execution could ultimately leave Petitioners with a valid judgment but without any route to full recovery.  In circumstances where Petitioners filed their Request for Arbitration almost fourteen years ago—in November 2007—such an outcome would be deeply inequitable.

Finally, no delay to the entry of default judgment can be justified when Venezuela is responsible for the annulment proceedings being suspended.  The ICSID Convention requires Venezuela to satisfy the Award, and it also requires Venezuela to meet its payment obligations towards ICSID for the annulment proceedings (which Venezuela commenced).  Staying recognition and enforcement of the Award would reward Venezuela for reneging on its payment obligations towards ICSID.  There is no justification for doing so, particularly in circumstances

---

[11]    Recent actions by arbitration award creditors against Venezuela include:  *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venez.*, No. 1:21-mc-00340 (D. Del. filed Aug. 26, 2021) (registering judgment); *Northrop Grumman Ship Systems, Inc. v. Ministry of Defense of the Republic of Venez.*, No. 1:20-mc-00257 (D. Del. filed July 31, 2020) (seeking execution on Venezuela's assets in Delaware); *OI Eur. Grp. B.V. v. Bolivarian Republic of Venez.*, No. 1:19-mc-00290 (D. Del. filed Nov. 04, 2019) (same); *Tidewater Investment SRL v. Bolivarian Republic of Venez.*, No. 1:19-mc-00079 (D. Del. filed Apr. 03, 2019) (same); *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 1:17-mc-00151 (D. Del. filed June 19, 2017) (same); *Koch Minerals Sàrl v. Bolivarian Republic of Venez.*, No. 17-CV-2559-ZMF, 2021 WL 3662938 (D.D.C. Aug. 18, 2021) (summary judgment on ICSID award granted August 18, 2021); *Tenaris S.A. v. Bolivarian Republic of Venez.*, No. 1:18-cv-01373 (D.D.C. filed June 8, 2018) (judgment on ICSID award entered August 24, 2021); *Vestey Grp. Ltd. v. Bolivarian Republic of Venez.*, No. 1:18-cv-01456 (D.D.C. filed June 20, 2018)  (judgment on ICSID award entered January 19, 2021); *Tenaris S.A. v. Bolivarian Republic of Venez.*, No. 1:18-cv-01371 (D.D.C. filed June 08, 2018) (judgment on ICSID award entered July 17, 2020); *Valores Mundiales, S.L. v. Bolivarian Republic of Venez.*, No. 1:19-cv-00046 (D.D.C. filed Jan. 08, 2019).

where the *ad hoc* Committee decided, after a careful balancing of harms and receiving assurances from Petitioners, to lift the stay on enforcement pending resolution of Venezuela's annulment application.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court enter judgment for Petitioners and against Venezuela.  A proposed form of judgment is submitted herewith.

Dated:  October 20, 2021
        New York, New York

Respectfully submitted,

By: _____/s/ Elliot Friedman_____

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
Elliot Friedman (D.C. Bar No. NY0106)
David Y. Livshiz (D.C. Bar No. NY0269)
Sam Prevatt (admitted *pro hac vice*)
Cameron Russell (D.C. Bar No. NY0321)

601 Lexington Avenue
31st Floor
New York, New York 10022
Tel:    212-277-4000
Fax:    212-277-4001
*elliot.friedman@freshfields.com*
*david.livshiz@freshfields.com*
*sam.prevatt@freshfields.com*
*cameron.russell@freshfields.com*

**D. Brian King** (admitted *pro hac vice*)
New York University School of Law,
40 Washington Square South
New York, New York 10012
Tel:    212-992-8175
*brian.king@dbkingarbitration.com*

**KOBRE & KIM LLP**
Michael S. Kim (D.C. Bar No. 1032401)
Marcus J. Green (D.C. Bar No. 999223)
Josef M. Klazen (D.C. Bar No. 1003749)
1919 M Street, NW
Washington, DC 20036
Tel:    202-664-1900
*michael.kim@kobrekim.com*
*marcus.green@kobrekim.com*
*josef.klazen@kobrekim.com*

*Attorneys for ConocoPhillips Petrozuata B.V.,*
*ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of*
*Paria B.V.*

22