UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONOCOPHILLIPS PETROZUATA B.V.,
et al.,

      *Petitioners*,

   v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

      *Respondent*.

Civil Action No. 1:19-cv-0683 (CJN)

### MEMORANDUM OPINION

Petitioners, three corporations of the Netherlands, seek to confirm and enforce an arbitration award issued against the Bolivarian Republic of Venezuela. *See generally*, Pet., ECF No. 1. After Petitioners effected service, Venezuela failed to enter an appearance, and Petitioners moved for default judgment. *See* Pets.' Mot. for Default Judgment, ECF No. 35. Venezuela still has not entered an appearance or otherwise opposed the Motion. For the following reasons, the Court grants the Motion and enters judgment for Petitioners.

**Background**

*The ICSID Convention*

The International Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, is a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,* 863 F.3d 96, 100 (2d Cir. 2017). The Convention established the International Centre for Settlement of Investment Disputes ("ICSID") to administer

1

arbitration proceedings between a contracting state and a national of another contracting state, including the arbitral proceeding here. ICSID Convention arts. 1–3, 25; *see* Pet., ECF No. 1.

ICSID is not empowered to enforce its awards. Instead, contracting states are required to "recognize an award . . . as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention art. 54.

The United States joined the ICSID Convention, *see* ICSID, *List of Contracting States and Other Signatories of the Convention* (Aug. 27, 2018), and federal legislation implemented the Convention's requirement that courts recognize and enforce ICSID awards. Specifically, 22 U.S.C. § 1650a(a) provides:

> An award of an arbitral tribunal rendered pursuant to [the ICSID Convention] shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.

*Id.* (explaining further that the Federal Arbitration Act "shall not apply to enforcement of awards rendered pursuant to the convention.").

*The Underlying Arbitration*

On November 2, 2007, Petitioners ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., and ConocoPhillips Gulf of Paria B.V. filed with ICSID a Request for Arbitration against the Bolivarian Republic of Venezuela. Friedman Decl., Mar. 11, 2019, ECF No. 1-2, ("First Friedman Decl.").[1] They alleged that Venezuela had expropriated Petitioners' business interests in three oil projects unlawfully, without compensation, and in violation of the bilateral

---

[1] The ConocoPhillips Company also joined the Request, but the ICSID Tribunal dismissed it for lack of jurisdiction. *See* Friedman Decl. Ex. A at 8.

investment treaty ("BIT") between the Netherlands and Venezuela. ICSID Decision on Merits, ECF No. 1-6, ¶¶ 2, 6, 10–11, 24, 208, 404. An ICSID tribunal ("the Tribunal") was constituted on July 23, 2008. *Id.* at ¶ 13–14, 18, 23–24.

On September 3, 2013, after lengthy and contested proceedings, the Tribunal issued its decision, holding both that it had jurisdiction over the dispute and that Venezuela had unlawfully expropriated Petitioners' investments in violation of the BIT. *Id.* at ¶ 404. Venezuela moved for reconsideration, and on January 17, 2017, the Tribunal issued an Interim Decision reaffirming its prior findings. First Friedman Decl. at Ex. E (Interim Decision), ¶ 156(3), ECF No. 1-7.

On March 8, 2019, the Tribunal rendered its final Award, which incorporated the two prior decisions. First Friedman Decl. at Ex. A (Award), ECF No. 1-3, ¶¶ 38, 43, 1009. The Award included money damages of $8,733,046,155,[2] along with post-award interest until payment is made in full, to begin accruing 60 days after the issuance of the Award. *Id.* at ¶¶ 1010(1)–(3), 1010(9). The Tribunal also ordered Venezuela to reimburse Petitioners for a portion of their legal fees and the costs of arbitration, in a total additional amount of $21,861,000.[3] *Id.* at ¶¶ 1010(6)–(7). The total amount owed to Petitioners as of the date of the Award (March 8, 2019) was $8,754,907,155.[4]

---

[2] All amounts herein are USD.

[3] The Award requires Venezuela to pay Petitioners for certain ICSID arbitration costs. First Friedman Decl., Ex. A (Award), ¶ 1010(7), ECF No. 1-3. The Award states that the amount of ICSID arbitration costs owed to Petitioners by Venezuela would be "reduced by the balance refunded by ICSID to [Petitioners]." *Id.* On May 28, 2021, ICSID refunded Petitioners $116,594.28. Russell Decl. at Ex. A (Email from ICSID Finance Team). As a result, the amount of legal fees and ICSID arbitration costs owed to Petitioners under the Award is $21,744,405.72. *See* Russell Decl. ¶¶ 7, 12.

[4] After the refund, *see supra* at n.3, the total amount is $8,754,790,560.72.

The Award also provides for post-award (pre-judgment) interest to accrue on the amounts owed from May 7, 2019 "until the date of full and final payment" as follows: interest on the sum of $8,366,137,393 at an annual rate of 5.5% compounded annually; simple interest on the sum of $139,807,899 at 12-month LIBOR; and simple interest on the sum of $21,744,405.72 at an annual rate of 3%. Award ¶¶ 1010(1)–(3), (6)–(7), (9); Decision on Rectification at ¶ 64(1)–(2), ECF No. 14-1.

On December 16, 2019, Petitioners were notified that Venezuela had applied to ICSID for a stay of enforcement, and ultimately annulment, of the Award. Friedman Decl. of Sept. 30, 2021 ("Second Friedman Decl."), ¶ 9, ECF No. 32-1. Under Article 52(5) of the ICSID Convention, enforcement was provisionally stayed until ICSID appointed an *ad hoc* annulment committee and it had an opportunity to decide whether the stay should be continued. First Friedman Decl. at Ex. B (ICDID Convention Excerpts), ECF No. 1-4. The *ad hoc* Committee received multiple rounds of submissions from Venezuela to stay enforcement and held a hearing on Venezuela's request on September 30, 2020. Second Friedman Decl., ¶ 9.[5]

On November 2, 2020, the *ad hoc* Committee decided to lift the stay of enforcement if Petitioners met certain conditions and provided certain assurances. *See* Status Report of Dec. 7, 2020 at Ex. A (ICSID *ad hoc* Committee's Decision on the Applicant's Request to Continue the Stay of Enforcement of the Award), ¶ 67, ECF No. 29-1. Among the requirements for lifting the stay, the Petitioners were to guarantee to keep any collected funds in segregated accounts until the

---

[5] Among Venezuela's submissions was an acknowledgment of the proceeding before this Court. Second Friedman Decl., ¶ 9. Venezuela also publicly acknowledged the proceeding before this Court following the entry of default. *See* Russell Decl., ¶ 8; Russell Decl., at Ex. B (Venezuela National Communication Center Press Release).

annulment proceedings are complete, and to return to Venezuela any collected funds if the Committee ultimately annuls the Award.  *Id.* at ¶ 67(3).

On September 29, 2021, the *ad hoc* Committee confirmed that Petitioners had satisfied all conditions necessary for lifting the automatic stay of enforcement proceedings and confirmed that the stay had been discontinued.  *See* Second Friedman Decl. at Ex. A (Committee's Decision Confirming Discontinuance of Stay of Enforcement), ECF No. 32-2.  Venezuela then asked the *ad hoc* Committee to reconsider its decision to lift the stay, but before the Committee ruled the annulment proceeding was suspended as a result of Venezuela's non-payment of advances on costs.  *See* Mot. at 5; Russel Decl. ¶ 6.

On March 14, 2022, the *ad hoc* Committee declared the annulment proceeding resumed and invited the parties to confer on dates for a hearing.  *See* ECF. No. 36.  On March 18, 2022, one of the members of the *ad hoc* Committee resigned, and the ICSID declared the annulment proceeding temporarily suspended until a replacement Committee member is appointed.  *See* ECF No. 37.

*This Proceeding*

On March 11, 2019, Petitioners commenced this action to enforce the Award.  *See* Pet. After some difficulties, service of the summons, Petition, and a notice of suit was effected under 28 U.S.C. § 1608(a)(4) on January 10, 2020.  *See* 28 U.S.C. § 1608(c)(1); Return of Service, ECF No. 20.  The FSIA requires an answer or other responsive pleading to be served within 60 days of service having been made.  *See* 28 U.S.C. § 1608(d).  Venezuela was therefore required to file response by March 10, 2020.  But Venezuela did not do so, nor has it entered an appearance or otherwise made any filings in this case.

On September 30, 2021—just after the *ad hoc* Committee confirmed that the stay of enforcement of the Award had been lifted—Petitioners requested the Clerk enter default. *See* ECF No. 32. Shortly thereafter, the Clerk did so. *See* ECF No. 33.

Petitioners now move for entry of default judgment against Venezuela. *See* ECF No. 35.

### Legal Standards

When a defendant or respondent fails to defend its case, the plaintiff or petitioner can seek a default judgment. *See* Fed. R. Civ. P. 55, *Keegel v. Key West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Where, as here, the claim is for a sum that can be made certain by computation, and the plaintiff provides an affidavit showing the amount due, the clerk must enter judgment for that amount and for costs. *See* Fed. R. Civ. P. 55(b)(1). But under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 et seq.:

> No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.

28 U.S.C. § 1608(e). This is akin to the procedure for a default judgment against the United States. *See* Fed. R. Civ. P. 55(d) ("A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."). The FSIA "does not require the court to demand more or different evidence than it would ordinarily receive" to establish a prima facie right to relief. *Owens v. Republic of Sudan,* 864 F.3d 751, 785 (D.C. Cir. 2017), vacated and remanded on other grounds sub nom. *Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).

Analysis

I.  **The Court Has Jurisdiction.**

　　A.  **The Court Has Subject-Matter Jurisdiction.**

The FSIA provides that "district courts . . . have original jurisdiction [in] any nonjury civil action against a foreign state [when] the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a).  Under the FSIA, Venezuela does not have sovereign immunity for two reasons:  this case falls within the "arbitral award" exception and Venezuela "waived its immunity . . . by implication" by being a Contracting State to the ICSID Convention during the relevant period.  28 U.S.C. §§ 1605(a)(6), (a)(1).

First, FSIA's arbitration exception provides:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— . . .

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitration, if . . . (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards . . . .

28 U.S.C. § 1605(a)(6).

"The Court has little trouble concluding, pursuant to the arbitral award exception, that Venezuela is not entitled to immunity in this action." *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, 2018 WL 6605633, at *4 (D.D.C. 2018).  The Petition seeks enforcement of an arbitration under the ICSID Convention, which as noted is a treaty in force in the United States which calls for the recognition and enforcement of such awards.  *See also Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013).

To be sure, while the arbitration was pending, Venezuela withdrew from the ICSID Convention, effective on July 25, 2012. But the relevant rights and obligations of the parties arose before Venezuela's denunciation took effect, and were therefore unaffected by it. *See* First Friedman Decl., Ex. B (ICSID Convention Excerpts), Art. 72, ECF No. 1-4 ("Notice [of denunciation] by a Contracting State . . . shall not affect the rights or obligations under this Convention . . . arising out of consent to the jurisdiction of [ICSID] given by one of them before such notice was received by the depositary."); *see also Tidewater*, 2018 WL 6605633, at *4, n.3. Furthermore, it does not appear that Venezuela has ever challenged the ICSID proceedings on the grounds of its withdrawal.

Second, the FSIA directs courts to respect foreign states' waivers of sovereign immunity:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver[.]

28 U.S.C. § 1605(a)(1).

Relevant here, Venezuela implicitly waived its sovereign immunity with respect to suits to recognize and enforce ICSID awards by becoming a Contracting State to the ICSID Convention. *See* Art. 54(1) (obliging each Contracting State to "recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court of that State."). To hold otherwise would be to disrespect Venezuela's choice (at the time) to be a Contracting State, and it would diminish other Nations' ability to attract investment in the future by committing themselves to resolving investment disputes through arbitration. *M.B.L. Int'l Contractors, Inc. v. Republic of Trin. & Tobago*, 725 F. Supp. 52, 55–56 (D.D.C. 1989) (concluding the same with regard to the United

8

Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,* 863 F.3d 96, 100 (2d Cir. 2017).

### B. The Court Has Personal Jurisdiction Over Venezuela.

Under the FSIA, "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief under which the district courts have [subject-matter] jurisdiction under [28 U.S.C. § 1330](a) where service has been made under" 28 U.S.C. § 1608. *See* 28 U.S.C. § 1330(b); *GSS Group Ltd. v. Nat'l Port Authority*, 680 F.3d 805, 811 (D.C. Cir. 2012). The Court of Appeals has held that the constitutional due process limitations to personal jurisdiction do not apply to foreign nations. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89, 98–99 (D.C. Cir. 2002).

The FSIA provides four methods for serving a foreign sovereign, which should be attempted sequentially. 28 U.S.C. § 1608(a); *Angellino v. Royal Family Al-Saud,* 688 F.3d 771, 773 (D.C. Cir. 2012) (A "plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." (quotation marks omitted)). As the Court of Appeals has summarized:

> The Act provides four methods of service in descending order of preference. First, "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." [28 U.S.C.] § 1608(a)(1). Second, "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(a)(2). Third, "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned[.]" *Id.* § 1608(a)(3). And fourth, if none of the first three methods works, a plaintiff can serve the appropriate documents through the Department of State. *Id.* § 1608(a)(4).

9

*Barot v. Embassy of the Republic of Zambia,* 785 F.3d 26, 27 (D.C. Cir. 2015). When the defendant has not appeared, the plaintiff need only make a prima facie showing of having made appropriate service. *See Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C. Cir. 2005).

Petitioners have demonstrated that service of process was appropriate through the Department of State—the fourth method.

As for the first method of service, it is inapplicable because the parties had no "special arrangement for service." Second Friedman Decl. ¶ 4.

The second method looked promising as the United States and Venezuela are subject to the Hague Service Convention for the service of judicial documents. *See* Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 63. Petitioners presented evidence that they had mailed and Venezuela received by April 29, 2019 everything necessary for the completion of service under the Hague Service Convention. Affidavit Requesting Foreign Mailing, ECF No. 15. But Venezuela has not certified their receipt of service, so service was not officially completed pursuant to the Convention. *Id.*

As to the third method, Petitioners assert that it is inapplicable because Venezuela has formally objected to service by mail. *See* Second Friedman Decl. ¶ 6. Other Courts in this District have concluded that, in these circumstances, it is appropriate to move to the fourth method, and the Court agrees. *See, e.g.*, *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-1457, 2018 WL 6605633, at *5 (D.D.C. Dec. 17, 2018) (citing Dutch Government Treaty Database: Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters: Parties with Reservations, Declarations, and Objections (entry for Venezuela), https://treatydatabase.overheid.nl/en/Verdrag/Details/004235_b#Venezuela).

The fourth method was successful. Petitioners requested assistance of the Clerk of the Court. *See* Affidavit Requesting Foreign Mailing 1, ECF No. 15. All documents necessary for diplomatic service, including the summons, Petition, and notice of suit, were mailed to the U.S. Department of State by the Clerk of the Court on October 3, 2019. *See* Certificate of Mailing, ECF No. 17. On January 13, 2020, a representative of the Secretary of State sent the Clerk of the Court a certified copy of the diplomatic note indicating that the papers were transmitted to the Venezuelan Embassy in Washington, D.C. on January 10, 2020. *See* Return of Service, ECF No. 20. Service on Venezuela was therefore accomplished under 28 U.S.C. § 1608(a)(4) on January 10, 2020. *See* 28 U.S.C. § 1608(c)(1).

The Court therefore concludes that Petitioners have adequately established proper service, *see* 28 U.S.C. § 1608(a)(4). And because Petitioners have also established subject-matter jurisdiction, *see* 28 U.S.C. § 1330(a); *supra* at § I.A, they have demonstrated that the Court has personal jurisdiction over Venezuela. 28 U.S.C. § 1330(b).

**II.    Venezuela Failed to Respond to Proper Service.**

Venezuela had 60 days after service to answer or otherwise respond to the Petition. *See* 28 U.S.C. § 1608(d). Service was completed on January 10, 2020, *see* Return of Service, ECF No. 20; 28 U.S.C. § 1608(c)(1), and thus Venezuela had until March 10, 2020, to respond to the Petition. To date, Venezuela has made no appearance, has not filed or served any pleadings, and has not received any extension of time to do so.

**III.   Petitioners Have Sufficiently Established Their Claim for Relief.**

As noted above, 28 U.S.C. § 1608(e) requires that prior to entry of default judgment, the claimant must "establish[] his claim or right to relief by evidence satisfactory to the court." *See also Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008) (The plaintiff "must

present a legally sufficient prima facie case, *i.e.*, a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff.").

The relevant statute provides that "[t]he pecuniary obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states." 22 U.S.C. § 1650a(a); *see also* ICSID Convention, Art. 54(1) (requiring member States "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."). This is not a demanding standard. *See Tidewater*, 2018 WL 6605633, at *6. The Court treats a final judgment of a state court as conclusive if the rendering court had jurisdiction, and the rendering court's determination of its own jurisdiction is dispositive when it was fully and fairly litigated. *See Durfee v. Duke*, 375 U.S. 106 (1963).

Petitioners have submitted to the Court what appear to be accurate copies of the Award, the *ad hoc* Committee's decision to lift the provisional stay on enforcement of the Award, the *ad hoc* Committee's confirmation that the provisional stay of enforcement has been discontinued, and all other relevant documents. *See* First Friedman Decl. ¶ 3 & Ex. A (Award); *id*. at Ex. D (2013 Decision on Jurisdiction and the Merits); Status Report, Dec. 7, 2020, Ex. A (Decision on the Applicant's Request to Continue the Stay of Enforcement of the Award), ECF No. 29-1; Second Friedman Decl. ¶ 4 & Ex. A (Committee's Decision Confirming Discontinuance of Stay of Enforcement). These are each thorough, careful, and well-reasoned. There is no apparent basis to disregard them. These materials are enough to establish a prima facie entitlement to relief, and Petitioners have therefore established their entitlement to relief under 22 U.S.C. § 1650a.

**IV.     The Annulment Proceedings Do Not Disturb Entry of Default Judgment.**

As noted, the *ad hoc* Committee resumed the annulment proceeding on March 14, 2022. Status Report, ECF No. 37.  Shortly thereafter, one of the members of the Committee resigned and thus ICSID temporarily suspended the proceeding until a replacement Committee member is appointed.  *Id.*  Venezuela has not appeared here and is obviously not seeking a stay of these proceedings pending the disposition of the annulment proceedings.  *See Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, No. 1:19-CV-02424, 2022 WL 715215, at *3 (D.D.C. Mar. 10, 2022) (declining to stay case seeking enforcement of an ICSID arbitral award where similar annulment proceedings were ongoing, even though respondent was actively seeking a stay and contesting enforcement).

The Court will not do so *sua sponte*.  Courts generally have inherent power to stay proceedings before them. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Courts "weigh[s] competing interests and maintain[s] an even balance between the court's interest in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (cleaned up).  To be sure, there would be some undue hardship to Venezuela from enforcement of this judgment if the Award is ultimately annulled by the *ad hoc* Committee.  But the Court has no reason to think annulment particularly likely.  And any potential hardship is lessened because Petitioners have guaranteed to return any sums collected pre-annulment.  Any hardship to Venezuela also would have to be balanced against Petitioners' hardship in waiting even longer to begin collecting.  Fifteen years is long enough.

**Conclusion**

Accordingly, the Court grants the Petitioners' Motion for Default Judgment. An Order will issue contemporaneously with this opinion.

DATE: August 19, 2022

*[signature]*
CARL J. NICHOLS
United States District Judge